*New-Haven,*
November,
1816.

Buck
*v.*
Cotton.

## BUCK *against* COTTON.

*notice before demand or a nullity*

*A.* being insolvent, made a promissory note payable to *B.* or order, which *B.* with full knowledge of such insolvency, and having given no value for it, indorsed, to give it credit and currency: Held, that notwithstanding these circumstances, the indorser was entitled to regular notice.

THIS was an action against the defendant as indorser of a promissory note, made by one *Scovil,* dated the 21st day of *February* 1815, and payable ninety days after date.

The cause was tried at *Middletown, July* term 1816, before *Swift,* Ch. J. and *Goddard* and *Hosmer,* Js.

On the trial, the plaintiff offered evidence to prove, that he demanded payment of the note from the maker, on the 25th of *May* 1815 ; and that he gave notice to the defendant, that the note had become due, and was not paid, and that he should look to him, the defendant, for payment, on the 24th. The plaintiff also offered evidence to prove, that *Scovil,* at the time the note was executed, was utterly insolvent, and had no estate or means of payment, and so had ever since continued ; that this fact was then well known to the defendant ; and that the defendant, with such knowledge, indorsed

*New-Haven,*
November.
1816.

Buck
*v.*
Cotton.

the note, having no interest in it, merely to give it credit and currency. To the admission of the last mentioned evidence the defendant objected; and the court ruled it out. In the charge to the jury, the court instructed them, that if they should find that the plaintiff demanded payment on the 25th of *May*, and gave the defendant notice of non-payment on the 24th, they must, nevertheless, find a verdict for the defendant. The defendant having obtained a verdict, the plaintiff moved for a new trial, on the ground that the evidence offered by him was improperly rejected, and that the charge to the jury was incorrect. The questions arising on such motion were reserved for the consideration and advice of the nine Judges.

*Russell* and *Sherman*, in support of the motion, contended, that *Scovil* being from first to last utterly insolvent, and this fact being known to the defendant, the latter was not entitled to notice. They relied upon *De Berdt* v. *Atkinson*, 2 *H. Black*. 336. as an authority in point; and referred to the class of cases, deciding, that the drawer of a bill without funds in the hands of the drawee is not entitled to notice, as affording an analogical argument in support of their position.

*C. Whittelsey*, contra, cited *Nicholson* v. *Gouthit*, 2 *H. Black*. 609. *Jackson* v. *Richards*, 2 *Caines* 343. *Pons's* executors v. *Kelly*, 2 *Hayw*. 45. *Esdaile & al.* v. *Sowerby & al.* 11 *East* 114. *Smith & al.* v. *Becket*, 13 *East* 187. *Sandford* v. *Dillaway*, 10 *Mass. Rep.* 52. *French's* executrix v. *The bank of Columbia*, 4 *Cranch* 141.

SWIFT, Ch. J. No one principle of the common law is better settled than this; that the indorsee of a negotiable note must make demand of payment of the maker, when it becomes due, and give immediate notice of non-payment, to entitle him to recover of the indorser. The only contradictory decision is *De Berdt* v. *Atkinson*, 2 *H. Bla*. 336. where it is said, that a known insolvency of the maker of the note will excuse demand and notice: but this case has since been overruled in *England*, and in this country; and the contrary doctrine established.

This rule of law is founded in good reason, and results from the nature of the contract. It is the duty of the indorsee to use due diligence to collect the note: he ought to make

demand of payment from the maker, when it falls due ; for otherwise, it cannot be known but that it would have been paid. If not paid, he ought to give immediate notice to the indorser, to give him an opportunity to withdraw his funds from the hands of the maker, or to pursue his remedy on the note.

It is agreed, that if there be not a known insolvency, at the time of making the note, and continuing till it becomes due, demand and notice are necessary : but it does not follow from the insolvency of the maker of the note, that he will not pay it at the time ; or that the indorser cannot collect it, if he has seasonable notice of the non-payment. The maker of the note may have resources at command, though insolvent ; or he may have friends by which he would be able to pay, when demanded ; or special circumstances might exist, which would induce him to pay the indorser. As then insolvency is not conclusive evidence that the note will not be paid, the indorser is entitled to seasonable notice of the non-payment, to enable him to have recourse to his legal remedy.

If the rule is adopted, that a known insolvency shall excuse from giving notice, this might lead to disputes ; as it would often be a fact difficult to be ascertained ; but if notice be required, this could easily be given, and easily proved ; and frequent litigation might thereby be prevented.

The only case that bears any analogy to this, is that the want of funds in the hands of the drawee of a bill shall excuse from giving notice to the drawer of non-acceptance. But if the drawer has no funds in the hands of the drawee, he can never sustain a loss for want of notice, as he has no funds to withdraw, and can bring no action : it would, therefore, be useless to give him notice. In the case, however, of an indorsed note, the indorser has a remedy on the note, which makes the case entirely different from that of a bill of exchange where the drawer has no funds in the hands of the drawee.

I would not advise a new trial.

In this opinion TRUMBULL, EDMOND, SMITH, BRAINARD, BALDWIN and GODDARD, Js. concurred.

HOSMER, J. The notice in this case was an entire nullity. It was given the day before the note fell due, and before demand made of the maker ; of consequence, before there

*New-Haven,*
November,
1816.

Buck
*v.*
Cotton.

had been any default. *Wiffin* v. *Roberts,* 1 *Esp. Rep.* 262. *Jackson* v. *Richards,* 2 *Caines* 344. *Jones* v. *Fales,* 4 *Mass. Rep.* 245.

It is, as a general rule, admitted, that after legal demand made on the maker, reasonable notice of non-payment must be given to the indorser. The reason is obvious. The contract of the indorser is not *absolute,* but *conditional.* It is merely this : " If you use due diligence in demanding the money, and the maker refuses to pay it, and *you will give me reasonable notice of this,* I will pay you." If the stipulation requiring notice were utterly useless, it might, with propriety, be disregarded. But if the maker of the note is insolvent, this cannot with truth be asserted. It would be in opposition to known possibilities, and repeated decisions. " It is no excuse," said Lord *Mansfield,* " for not demanding payment on a note or bill, or giving notice, that the maker or acceptor has become bankrupt, as many ways may remain of obtaining payment, by the assistance of friends, or otherwise." *Doug.* 515. 1 *Term Rep.* 408. 2 *H. Black.* 612. 11 *East* 117. " The insolvency of the maker renders the indorser's remedy less valuable ; it does not necessarily render it worthless." *Sandford* v. *Dillaway,* 10 *Mass. Rep.* 54.

It was contended in the argument, that as *Scovil* was a known insolvent, and the defendant indorsed his note merely to give it credit and currency, the indorser must be considered as having waived notice, and become co-debtor with him. This conclusion is most unwarrantable. If the defendant had intended to become *absolutely* bound, he would have given a note with *Scovil,* or, in some explicit shape, would have assumed the payment of the debt. But an indorsement of a note does not import *an absolute engagement.* It is a collateral contract and conditional agreement ; from its nature and frequency, perfectly intelligible ; and always implying the same obligation. There is nothing in the form of the indorsement ; nothing in the established usage of merchants ; nothing in the demands of justice, which distinguishes the case under discussion from ordinary cases. The defendant appears in the well known character of an indorser ; and in that character he must be treated, or the court cannot escape the imputation of *making,* instead of *construing,* the contract.

It has been urged, that this case is analogous to those where the drawer of a bill has no effects in the hands of his drawee. In those cases, he is not entitled to notice. I answer, that there is no analogy. His drawing the bill is *a fraud;* he knows it will be dishonoured; and in the last resort, he is answerable, without the possibility of recourse to any other person. 1 *Term Rep.* 405. 2 *Term Rep.* 713. But in relation to an indorser for the accommodation of another, the very reverse is true. He has committed no fraud; he cannot know that the maker of the note will not pay it; and he has a deep interest in notice of non-payment, that he may call on him for satisfaction or security.

It is highly to be desired, that there should be *a certain rule* in these cases, which, in the event of the most hopeless bankruptcy, *may* be productive of benefit. But to render notice unnecessary in the event of insolvency, is opening a door to expensive litigation, and much possible injustice. Even in the instance of bills drawn on one who has no funds of the drawer in his hands, it has been the subject of regret " that the old rule requiring notice to be given, *in all cases,* to the drawer, of non-acceptance of his bill, was so far broken in upon." " But," says Lord *Ellenborough,* " I shall anxiously resist the further extension of the exemption." 7 *East* 362.

There has been some inconsistency of decision concerning the liability of an indorser under the facts of this case; but the law is now well established. In the year 1794, a case occurred in the *English* court of common pleas, precisely like the one under discussion. The court adjudged, that " the defendant meant to guarantee the payment of the note" absolutely. *De Berdt* v. *Atkinson,* 2 *H. Black.* 336. In the succeeding year, *Buller,* J., one of the judges of the above-mentioned court, again expressed the same opinion. *Corney* v. *Da Costa,* 1 *Esp. Rep.* 302. But in the year next succeeding, the same court of common pleas reversed their former decision; and on this subject the *English* courts have made no subsequent determination. *Nicholson* v. *Gouthit,* 2 *H. Black.* 609. " The difficulty," said the Lord Chief Justice, " arises from the mode which the parties have chosen in which the guaranty shall take place, *by the indorsement of a note.* The question, then, is, whether, when the guaranty is taken in that shape, all the legal consequences do not follow,

so as to limit its generality? Upon consideration, I cannot say, that they do not follow; and they require a demand on the maker, and notice to the indorser, within a reasonable time.

In the states of *New-York, Massachusetts* and *North-Carolina,* the same question has been decided in a similar manner. *Jackson* v. *Richards,* 2 *Caines,* 343. *Sandford* v. *Dillaway,* 10 *Mass Rep.* 52. *Pons's* executors v. *Kelly,* 2 *Hayw.* 45. In the case of *Jackson* v. *Richards, Kent,* Ch. J. said, "When a person signs a note *in the character of indorser,* the presumption is, that he is to receive all the privileges of that character." And in the case determined in *Massachusetts,* the court observe, "The indorser of a promissory note contracts, that he will pay the contents, provided the maker does not pay it, when regularly demanded of him, and seasonable notice of his refusal or neglect to the indorser. This demand and notice he has a right to insist upon, for this reason, that upon payment by him, he may have his remedy over against the maker. And although the insolvency of the maker renders his remedy less valuable, it does not necessarily render it worthless." I entirely concur in the reasons assigned in both cases.

GOULD, J. According to the rule in the case of *De Berdt* v. *Atkinson,* and that in *Corney* v. *De Costa,* which I consider as substantially the same, the evidence of the maker's insolvency was improperly rejected. And I do not consider those cases as over-ruled, or at all shaken, by that of *Nicholson* v. *Gouthit,* or by any of the later *English* cases, cited at the bar. The grounds of determination, in the latter cases, were essentially different, from those, which governed the former; and were evidently so considered by the judges, who decided them. And I cannot say, that I am actually dissatisfied with the rule in *De Berdt* v. *Atkinson:* For under the circumstances of that case, (which are substantially the same as those of the present,) the indorser may, perhaps, be regarded as a co-debtor, and his liability, according to the understanding of the parties, as *primary.* But, as a different rule has been adopted, by respectable authorities, in this country; and as it is much more important, that a uniform rule be established, than that it be settled either way, rather than the other; I am not inclined to dissent from the

New-Haven,
November,
1816.

opinion of the Court.   I will add, that the latter rule has, perhaps, one practical advantage over the former: It is more simple, and definite; and its application, of course, less open to doubt and controversy, as being less dependent upon the particular circumstances of individual cases.

New trial not to be granted.