## HOLLAND *against* TURNER.

Where a promissory note was indorsed for the accommodation of the maker, the indorser having no funds in the maker's hands ; and *during all the time from the making of the note* until its arriving at maturity, the maker was insolvent, but that fact was not known to the indorser, at the time of his indorsement ; and the indorser held the goods for which the note was given, as security for his indorsement ; it was held, that neither of these circumstances, nor all combined, constituted any ground for dispensing with *notice to the indorser.*

Where a note payable at the *Union Bank,* in *New-London,* was sent, by the cashier of the *United States Branch Bank* in *Hartford,* to the *Union Bank,* for collection ; and when it fell due, payment being refused, it was protested for non-payment ; and the cashier of the *Union Bank,* on the same day, put the note, protest, and a *notice to the indorser,* in the *post-office* in *New-London,* directed to the cashier of the *United States Branch Bank* at *Hartford,* these proceedings being in conformity to the known and established usage of the *Union Bank* in like cases ; but it did not appear, that notice was otherwise given to the indorser, by any party to the note ; it was held, that such proceedings were not, in relation to the indorser, *a* compliance with the *rule requiring notice.*

THIS was an action of *assumpsit* against the defendant, as indorser of a promissory note, made by one *Brockway,* payable at the *Union Bank* in *New-London.* The declaration alleged a demand of payment at that place, and notice of non-payment to the defendant, in the usual form.

The cause was tried at *Norwich,* *March* term, 1834, before *Church,* J.

On the trial, it was agreed, that the note was made by *Brockway* and indorsed by the defendant, as alleged in the declara-

tion; that about this time, *Brockway* became insolvent, and has ever since continued so to be; but that his insolvency was not then known either to the defendant or to the plaintiff; that neither *Brockway* nor the defendant had, at any time, any funds in the *Union Bank* to meet the note, and the defendant had no funds in the hands of *Brockway;* that the note was made, and indorsed and delivered to the plaintiff in part payment of a quantity of boots and shoes, purchased, at that time, of the plaintiff, either by *Brockway*, or the defendant, and shipped to *New-London*, in pursuance of directions given by the defendant for that purpose; that the note was not sent to the *Union Bank* to be discounted, but for collection; for which purpose it was received, by that bank, from the cashier of the *United States Branch Bank* at *Hartford;* that it fell due on the 4th of *April,* 1833, when payment was demanded at the *Union Bank*, and refused; that it was duly protested, on that day, by a notary, who delivered the protest and note, with notices to the indorsers, to the cashier of the *Union Bank*, who, on the same day, put them in the post-office in *New-London*, directed to the cashier of the *United States Branch Bank* at *Hartford;* and that the defendant then lived in the city of *New-London.* The plaintiff proved, that the measures taken by the *Union Bank*, in relation to this note, were in conformity to the known and established usage of that bank in like cases.

The plaintiff also claimed to have proved, that the defendant was the real purchaser of the boots and shoes for which the note was given in part payment; and that it was made, indorsed and delivered to the plaintiff, for the sole accommodation and benefit of the defendant. The defendant claimed, that *Brockway*, and he alone, was the purchaser of the boots and shoes; that the note was indorsed by the defendant, for *Brockway's* accommodation and benefit; and that the defendant had never received notice of the dishonour of the note; that if said boots and shoes were shipped by the plaintiff, in pursuance of directions, given, by the defendant, for that purpose, it was so done in conformity to an arrangement made by *Brockway* with the defendant, that he, the defendant, should hold possession of such boots and shoes until *Brockway* should indemnify him for his indorsement of the note.

Upon the facts, so agreed and claimed, the plaintiff requested

*New-London,*
*July, 1834.*

Holland
*v.*
Turner.

the court to charge the jury, that no notice to the defendant, as indorser, was by law necessary ; and if it was, that the notice transmitted, by the cashier of the *Union Bank*, to the cashier of the *United States Branch Bank* at *Hartford*, was a sufficient notice to the indorser.

The court charged the jury, that it was incumbent upon the plaintiff to prove, that legal notice of the dishonour of the note had been given to the defendant, notwithstanding the transmission of notice, by the cashier of the *Union Bank*, to the cashier of the *United States Branch Bank*, unless the jury should find, that the note was made by *Brockway*, and indorsed by the defendant to the plaintiff, for the defendant's own accommodation, and not for that of *Brockway ;* and if the jury should so find, then no notice of the dishonour of the note was necessary, and their verdict must be rendered for the plaintiff ; otherwise, for the defendant.

The jury returned a verdict for the defendant ; and thereupon the plaintiff moved for a new trial.

*Law,* in support of the motion, contended, 1. That promissory notes, when indorsed, stand on the same footing, and are governed by the same rules, as bills of exchange. *Heylyn &* al. v. *Adamson,* 2 *Burr.* 669. *Brown* v. *Harraden,* 4 *Term Rep.* 148. *Orr* & al. v. *Maginnis,* 7 *East* 359.

2. That notice is not necessary where the indorser has no effects in the hands of the maker, or holds security to indemnify him against his indorsements. *Orr* & al. v. *Maginnis,* 7 *East* 359. *Chitt. Bills,* 205, 207. *Hammond* & al. v. *Dufrene,* 3 *Campb.* 145. *De Berdt* v. *Atkinson,* 2 *H. Bla.* 336. *Bond* & al. v. *Farnham,* 5 *Mass. Rep.* 170. *Barlow* v. *Baker,* 1 *Serg.* & *Rawle,* 334. *Mead* v. *Small,* 2 *Greenl.* 207. *Corney* v. *Da Costa,* 1 *Esp. Rep.* 302. *Brown* & al. v. *Maffey,* 15 *East* 216. *Bickerdike* & al. v. *Bollman,* 1 *Term Rep.* 405.

3. That the defendant being indemnified, by the very goods for which the note was given in part, cannot suffer injury for want of notice.

4. That if notice was necessary, the defendant is bound, by the usage of the bank. This known usage was complied with, and appears on the motion. *The Lincoln and Kennebeck Bank* v. *Page,* 9 *Mass. Rep.* 155. *Blanchard* v. *Hilliard,*

11 *Mass. Rep.* 85. *The Hartford Bank* v. *Stedman* & al. 3 *Conn. Rep.* 489. 497.

*Isham*, contra, insisted, 1. That the declaration was bad, as it did not assign as a breach, that *Brockway*, the maker of the note, refused to pay it. The court will not grant a new trial, if the plaintiff cannot recover on this declaration.

2. That the plaintiff having averred demand and notice, in common form, he cannot, under this averment, give in evidence any *excuse for not giving* notice. *Rushton* v. *Aspinall, Doug.* 679. *Bristow* & al. v. *Waddington* & al. 2 *New R p.* 355. *Slacum* v. *Pomeroy,* 6 *Cranch* 221. 1 *Chitt. Plead.* 320.

3. That if the plaintiff can show an excuse for dispensing with notice under this declaration, still no sufficient excuse appears on the motion.

First, that the maker was insolvent, that this was known to the defendant, and that he gave no consideration for the note, furnish no excuse. *Nicholson* v. *Gouthit,* 2 *H. Bla.* 609. *Jackson* v. *Richards,* 2 *Caines* 343. *Sandford* v. *Dillaway,* 10 *Mass. Rep.* 52. *Pons's* executors v. *Kelly,* 2 *Hayw.* 45. *Buck* v. *Cotton,* 2 *Conn. Rep.* 126. *Esdaile* v. *Sowerby,* 11 *East* 114. *Smith* & al. v. *Becket,* 13 *East* 187. and note (1) by *Day, p.* 189. By these and other authorities, the case of *De Berdt* v. *Atkinson,* 2 *H. Bla.* 336. has been overruled.

Secondly, that the defendant had no funds in the hands of the maker, constitues no excuse for want of notice. *Buck* v. *Cotton,* 2 *Conn. Rep.* 126.

Thirdly, that the defendant took security for his indorsement, is no excuse. The case principally relied on, to shew that it is, is *Bond* & al. v. *Farnham,* 5 *Mass. Rep.* 170. But there, the maker had assigned *all* his property as security for the indorsement; and the indorser agreed to provide for the paper. But it is not necessary to pursue the argument on this point, for it does not appear from the motion, that the defendant had any security. Besides, the doctrine of waiver of notice of the dishonour of bills of exchange, does not apply to notes. *Agan* v. *McManus,* 11 *Johns. Rep.* 180. *Jackson* v. *Richards,* 2 *Caines* 343. *French's* executrix v. *The Bank of Columbia,* 4 *Cranch* 141.

HARVARD LAW LIBRARY

New-London,
July, 1834.

Holland
v.
Turner.

Fourthly, that the indorsee was ignorant of the indorser's place of abode, is not sufficient, unless he used due diligence to discover it. *Bateman* v. *Joseph*, 12 *East* 433. *Beveridge* v. *Burgis*, 3 *Campb.* 262. *Barnwell* & al. v. *Mitchell*, 3 *Campb.* 101. But in this case, the motion finds, that the defendant resided in *New-London*, where the note was payable, and where it was protested.

4. That the proceedings in this case, were not available as notice, on the ground of usage. The usage of a single bank, will not controll the law merchant. *The Hartford Bank* v. *Stedman* & al., 3 *Conn. Rep.* 389. *Lawrence* v. *The Stonington Bank*, 6 *Conn. Rep.* 521. 529. Besides, it does not appear, that the defendant was acquainted with this usage.

BISSELL, J. In this case, the jury have found, that the note in question was not made and indorsed for the benefit of the defendant ; but that it was indorsed by him, for the accommodation of *Brockway*, the maker. The case also finds, that neither at the time of the indorsement, nor at any subsequent period, had *Turner* any funds in the hands of *Brockway*. It is also found, that during all the time from the making of the note, to its arriving at maturity, *Brockway* was insolvent ; but that that fact was not known to the defendant, at the time of his indorsement. It was also claimed, by the plaintiff, to have been proved, on the trial, that funds were placed in the hands of the defendant to secure him against this indorsement.

Upon the facts thus found, and the claims so made, two questions are presented for decision :

1. Whether the defendant was entitled to notice of the non-payment of the note ? And if so,

2. Whether due notice has been given ?

Other questions have, indeed, been raised and discussed, by the defendant's counsel. It has been contended, that the declaration is insufficient, as it contains no averment that payment of the note was refused by the maker. It has been further contended, that as the declaration avers a demand and notice, the plaintiff is bound to strict proof, and cannot be permitted to give in evidence any facts going to show, that notice was unnecessary. These questions it is not necessary to decide; as we

New-London,
July, 1834.

Holland
v.
Turner.

are unanimously of opinion, that the verdict is right upon both the points above stated.

1. Was the defendant entitled to notice of the dishonour of the note?

Although it is admitted, that *Brockway*, the maker, was insolvent, yet it has not here been contended, that this fact, standing alone, dispenses with the necessity of notice. But it has been urged, that notice was unnecessary, on two grounds: first, because the indorser had no funds in the hands of the drawer. It is said, that when the drawer of a bill of exchange has no funds in the hands of the drawee, he need not be notified of the dishonour of his bill. And it is further said, that promissory notes when endorsed, stand on the same ground, and are governed by the same rules, as bills of exchange; and hence it is inferred, that notice is not necessary where the indorser has no funds in the hands of the maker.

It was decided in *Bickerdike* v. *Bollman*, 1 *Term Rep.* 405. that where the drawer of a bill had no effects in the hands of the drawee, he was not entitled to notice. And this decision has been followed up in *Great-Britain;* and it may now be considered as the settled rule there, that where the drawer of a bill has no effects, *at the time of the bill drawn*, and no reason to expect that it will be honoured, he is not entitled to notice. But the judges, in that country, have been very careful not to extend the exemption further, at the same time that they have not been wanting in expressions of regret, that the former rule, requiring notice in all cases, should have been broken in upon. *Orr* v. *Maginnis*, 7 *East* 359. *Rogers* v. *Stephens*, 2 *Term Rep.* 713. *Legge* v. *Thorpe*, 12 *East* 171. *Walwyn* v. *St. Quintin*, 1 *Bos. & Pul.* 265. *Clegg* v. *Cotton*, 3 *Bos. & Pul.* 241. *Blackham* v. *Doren*, 2 *Campb.* 503.

The late Lord *Tenderden* (speaking of the case of *Bikerdike* v. *Bollman*, says: " That decision, which substituted knowledge for notice, I have always regretted, because it introduced nice distinctions into the law, instead of adhering to a plain and intelligible rule." Indeed, there can be little doubt, from the frequent intimations that have fallen from the Bench, that were this now an open question in *Great-Britain*, the ancient rule would be adhered to, as being less uncertain, and less inconvenient in practice. But, admitting the correctness

*New-London*,
July, 1834,
⎯⎯⎯⎯
Holland
*v,*
Turner.

of the rule, in regard to bills of exchange, it is not easy to see its application to the case now before us. It is certainly difficult to trace any analogy between the case of a bill, where the drawer has no effects, and that of a promissory note, *indorsed for the accommodation of the maker.* Why is it, that in the former case, the drawer is not entitled to notice? The reason is, that he had no right to draw the bill. The case has been treated as proceeding on the ground of fraud; and it was put upon that ground, by Lord *Alvanley,* and by *Heath* and *Chambre,* Justices, in the case of *Clegg* v. *Cotton,* 3 *Bos. & Pul.* 242. It was placed on the same ground, by the late Chief Justice of this court, in the case of *Buck* v. *Cotton,* 2 *Conn. Rep.* 126. He says: " His drawing the bill is a fraud; he knows it will be dishonoured, and in the last resort, he is answerable, without the possibility of recourse to any other person." But this is very far from being true with regard to him, who indorses a promissory note for the accommodation of the maker. He is guilty of no fraud. He has a right to expect that the note will be paid, by the maker, when it arrives at maturity; and has a right of recourse to him, if he shall be compelled to pay it. As is remarked in the case last cited, his undertaking is not absolute, but conditional. His contract is, not that he will pay, in all events, but that he will pay the note, provided the maker does not; and provided also, that demand be made, and reasonable notice given. Are we at liberty, either on the ground of principle or authority, to give a new character to the indorsement of a promissory note? To change the nature of the defendant's contract, and to hold him liable, although there be no demand, and no notice?

To sustain us in so doing, the case of *De Berdt* v. *Atkinson,* 2 *H. Bla.* 336. has been relied upon. In that case, it was, indeed, decided, that the payee of a promissory note, indorsing it to give it currency, *and knowing of the insolvency of the maker, at the time of such indorsement,* cannot, in an action against him as indorser, insist on the want of notice.

Admitting the case of *De Berdt* v. *Atkinson* to be law, there is this manifest distinction between that and the case at bar. There, the insolvency of the maker of the note was known to the indorser, at the time of his indorsement. Here, it is found that the insolvency of *Brockway* was not known, by the defendant, at the time of making and indorsement of the note.

*New-London,*
July, 1834.

Holland
*v.*
Turner.

But the authority of *De Bert* v. *Atkinson* has ever been questioned; and I think the case has been expressly overruled, by repeated decisions, both in *Great-Britain* and in this country. In *Leach* v. *Hewitt*, 4 *Tawnt.* 731. it is said, in relation to this case : " The court seem to have proceeded on a misapplication of the rule, which obtains as to accommodation acceptances. In those cases, the drawer himself being the real debtor, acquires no right of action against the acceptor, by paying the bill, and suffers no injury from want of notice of non-payment, by the acceptor : but in this case, the maker was the real debtor, and the payee a mere security, having a clear right of action against the maker, upon paying the note ; and therefore, entitled to notice to enable him to exert that right." See also *Smith* v. *Becket*, 13 *East* 187. *Brown* v. *Maffey*, 15 *East* 216. *Cory* & al. v. *Scott*, 3 *Barn. & Ald.* 619.

It has, indeed, been decided, that if the note be made for the accommodation of the indorser, and the money raised upon it, by a discount, be in fact received by him, he may be considered as a drawer without funds in the hands of the acceptor, and so not entitled to notice of non-payment by the maker. *French's* executrix v. *The Bank of Columbia*, 4 *Cranch* 141. *Agan* v. *McManus*, 11 *Johns. Rep.* 180. And this was the rule laid down, by the judge on the circuit. But there is no foundation for the application of the rule where the note has been made and discounted for the accommodation of the maker. There, the indorser, as he may have recourse to the maker, is entitled to strict notice. *French's* ex. v. *The Bank of Columbia*, 4 *Cranch* 141. *May* v. *Coffin*, 4 *Mass. Rep.* 341. *Warder* & al. v. *Tucker*, 7 *Mass. Rep.* 449. *Cory* & al. v. *Scott*, 3 *Barn. & Ald.* 619. *Buck* v. *Cotton*, 2 *Conn. Rep.* 126.

I will only remark further, on this part of the case, that the point now under consideration was expressly decided, by this court, in the case of *Buck* v. *Cotton* before cited. There, the maker of the note was notoriously insolvent, the defendent paid no value for it, and there was no pretence that he had effects in the hands of the maker. He indorsed the note to give it credit and currency. Yet it was held, notwithstanding these circumstances, that he was entitled to regular notice.

Secondly, it is insisted, that as the defendant had funds placed in his hands to secure him against this indorsement, therefore notice to him was unnecessary.

HARVARD LAW LIBRARY

New-London,
July, 1834.

Holland
v.
Turner.

We have shown what was the nature and character of the defendant's undertaking: that it was a conditional, and not an absolute engagement. We have seen upon what conditions he might be held answerable; and that, in the event of his being compelled to pay the note, he would have a right of recourse to the maker. He has taken security to indemnify him against *that undertaking*. Can it, then, be seriously contended, that the effect of taking such security, is to change entirely the character of the undertaking? To convert it from a conditional to an absolute one? When the defendant indorsed the note, he was entitled, in his character of indorser, to notice. Is there any reason why his subsequently having taken a security should deprive him of a right to which he was entitled when the indorsement was made? From the fact, that no notice was given, he would have a right to presume that the note was paid by the maker, and might thus be induced to part with his security.

The cases principally relied on, by the plaintiff, to support this claim, are *Corney* v. *Da Costa*, 1 *Esp. Rep.* 302. and *Bond* & al. v. *Farnham*, 5 *Mass. Rep.* 170.

With regard to the case of *Corney* v. *Da Costa*, it may be remarked, that it was a decision at *Nisi Prius*; and Mr. Justice *Buller*, who tried the cause, seems to have followed up the decision in *De Berdt* v. *Atkinson*. It may be remarked further, that there were peculiar circumstances existing in that case, which distinguish it from the present, and on which the decision may have been rested. There, the drawers of the note having become embarrassed in their circumstances, entered into a composition with their creditors, and agreed to make an assignment of their effects for their benefit. A deed to that effect was prepared. But in order to save expense, it was subsequently agreed, that the defendant should take these effects of the drawers, and indorse their notes to the several creditors for their respective compositions. It was on one of these notes that the action was brought; and it was held, that a demand and notice were not necessary. And although Mr. Justice *Buller* adverts to the circumstance, that there were no funds of the drawer in the maker's hands, yet he places his decision on the ground that this was an original, and not a collateral undertaking, on the part of the defendant, and that he was solely liable.

In *Bond* & al. v. *Farnham*, the maker had assigned *all his effects* to the defendant, to secure him against particular indorsements. There it was held, that a demand and notice were unnecessary; and unnecessary because the defendant knew that the demand would be fruitless, he having secured all the property which the maker had. Now, however highly we may respect the learned court, by whom this decision was made, and especially the eminent jurist, by whom the opinion was pronounced; and however we might be disposed to adopt his reasoning in a case resting on the same state of facts; we certainly do not feel called upon to apply it to a case like the one now before us. Nor are we disposed to enter into any speculations, with regard to the effect of notice; whether it would be of any benefit to the indorser, or whether he would be likely to be injuriously affected by the want of it. A rule founded on such speculations, must necessarily be uncertain, if not fluctuating, and exceedingly inconvenient in practice.

I believe that the great interests of the commercial community will be much more effectually promoted, by adhering to the ancient rule, requiring notice to the indorser in all cases; and a departure from which has called forth repeated expressions of regret from the most distinguished judges of the *British* bench.

I am, therefore, of opinion, that the defendant was entitled to notice of the dishonour of the note.

2. Has that notice been given? This is the only remaining subject of enquiry; and upon this it would seem impossible that a doubt should exist.

It appears, that the *Union Bank* at *New-London*, who received the note for collection merely, made the necessary demand on the maker, and according to their uniform usage, in such cases, forwarded the protest and notices to the *Branch Bank* of the *United States* at *Hartford*, from whom they received the note, and by whom it appears to have been discounted. And this is all that the case finds regarding notice, except that the defendant lived in *New-London*. It does not appear, that the *Branch Bank* took any measure to notify the defendant; or that he was notified by his immediate indorser, or any other party to the note, of its non-payment. Now, upon this state of facts, it seems to me to be the height of absurdity, to claim, that there has been, as to the defendant, any thing

*New-London,*
*July, 1834.*

Holland
*v.*
Turner.

HARVARD LAW LIBRARY

*New-London,*
*July, 1831.*

*Holland*
*v.*
*Turner.*

like a compliance with the rule requiring notice. So far as he is concerned, the *Union Bank* might as well have locked up the protest and notices in their own vaults. I do not mean to say, that the *Union Bank* have not done all which was incumbent on them, in order to save themselves harmless. They transmitted the protest and notices to the party, from whom they received the notice; and so far as they were concerned, perhaps that was sufficient. But it was, unquestionably, the duty of the *Branch Bank* to give reasonable notice to the party to whom they meant to look for payment. And he should have given the like notice to his indorser; and laches any where in relation to the defendant, will discharge him. *Turner* v. *Leach,* 4 *Barn.* & *Ald.* 451.

Had the case found, that the defendant received notice through his indorsee, or, indeed, from any other party to the note, the question then might have arisen, whether such notice was reasonable; or whether, as *New-London* was his known place of residence, he was not entitled to immediate notice from the *Union Bank;* and the question of usage might then have been raised. But upon the state of facts presented to us, no such question can arise; unless it is to be claimed, that notice to one party to a promissory note, is constructive notice to all other parties; and surely, no usage can sanction such a manifest perversion of all principle.

I am, therefore, of opinion, that the direction to the jury was right; and the motion must be denied.

The other Judges were of the same opinion, except PETERS, J., who was absent.

New trial not to be granted.