12  303
66  474

## THE EAST-HADDAM BANK *against* SCOVIL.

*A*, residing at *Saybrook*, in this state, being the holder of a bill of exchange, drawn by *B* in *London*, on *C* in *New-York*, and accepted by *C*, payable to the order of *A*, endorsed it, and transmitted it, sometime before it became due, to the *East-Hadd am Bank*, for collection.    The cashier of this insti- tution, without endorsing it, transmitted it, with other bills, to the *Mer- chants' Exchange Bank* in *New-York*, for collection.    When it came to maturity, the latter bank had it presented to *C*, who then was, and still is, insolvent, for payment; and payment not being made, it was protested for

*Middlesex,*
July, 1837.

East-Haddam
Bank
*v.*
Scovil.

non-payment, and due notice was given to *B*, the drawer; but no notice was given to the *East-Haddam Bank*, or to *A*, the holder. Two or three weeks afterwards, the *East-Haddam Bank*, supposing the bill had been paid in *New-York*, credited *A* with the amount, and paid it to him on his check. On discovering the mistake, the *East-Haddam Bank* sought to recover back the money so paid, in an action for money had and received against *A*. Held, that the plaintiffs were not precluded from a recovery, 1. by reason of their not having endorsed the bill, before they transmitted it to the *Merchants' Exchange Bank*, or advised that bank of *A's* place of residence; or 2. on the ground that the plaintiffs were responsible for the default of the collecting bank; or 3. by reason of their having credited *A* with the amount of the bill, and paid over the money to him; consequently, the plaintiffs, having obtained a verdict, were entitled to retain it.

THIS was an action of *assumpsit* for money had and received; tried at *Haddam, September* term, 1836, before *Church,* J.

On the 26th of *December*, 1831, *Noah Scovil*, of the city of *London*, in the kingdom of *Great-Britain*, drew a bill of exchange of that date, in favour of *Amos Scovil*, the defendant, for 610 dollars, payable seven months from its date, upon *Cheavens & Burdett*, merchants, in the city of *New-York*. This bill was afterwards accepted, by *Cheavens & Burdett*, and subsequently endorsed by the defendant, and *Samuel Ingham*, for the purpose of being transmitted to the *East-Haddam Bank* for collection; the sole interest of the bill being in the defendant, and *Ingham* endorsing it solely for his accommodation. On the 8th of *July*, 1832, *Ingham* sent the draft to the *East-Haddam Bank*, enclosed in a letter in the following terms: "Cashier of *East-Haddam Bank*. Sir, I send you a draft on *New-York* for 610 dollars, for collection. When it is collected, please advise me. Yours truly, *Samuel Ingham*." On the 12th of *July*, 1832, *Ely Warner*, the cashier of the *East-Haddam Bank*, enclosed it, together with several other bills and notes, in a letter to the *Merchants' Exchange Bank* in the city of *New-York*, for collection; but he did not endorse it; and whether the other bills transmitted at the same time were endorsed by him, did not appear. The bill was received, by the *Merchants' Exchange Bank*, who noted thereon, "For the *East-Haddam Bank*;" and on the 14th of *July*, the *East-Haddam Bank* received a letter from the cashier of the former bank, acknowledging the receipt of such bill. The *East-Haddam Bank* had before been in

correspondence with the *Merchants' Exchange Bank*, and forwarded to that bank exclusively, for collection, all bills and notes payable in the city of *New-York*, and kept no accounts of that nature with any other bank, agent or correspondent, in that city.

When the bill in question arrived at maturity, which was on the 29th of *July*, 1832, the *Merchants' Exchange Bank* caused it to be presented for payment to *Cheavens & Burdett ;* and payment not being made, it was duly protested for non-payment, and due notice was given to the drawer; but no notice was given to the *East-Haddam Bank*, or to *Ingham* or the defendant.

On the 10th of *August*, 1832, the plaintiffs, not having been advised regarding the fate of the bill, but supposing it to have been duly paid, and the avails passed to their credit, by the *Merchants' Exchange Bank*, credited the amount to *Ingham*, on their own books; and on the same day, the cashier addressed and forwarded a letter to him, advising him that the avails of the bill had been so passed to his credit ; which letter was duly received by *Ingham.* On the 11th of *August*, 1832, *Ingham* drew a check on the *East-Haddam Bank*, in favour of the defendant, for the avails of the bill; which check the defendant, within a few days thereafter, presented to the *East-Haddam Bank*, and received the money on it.

Before the bill became due, *Cheavens & Burdett* failed in business, and became insolvent ; and such they have continued to be. When the bill was received for collection, by the *East-Haddam Bank*, the cashier and officers thereof, knew, that *Ingham* and the defendant both resided in *Saybrook*, in the county of *Middlesex ;* and *Ingham* then was, and for some time before had been, one of the board of directors.

The plaintiffs proved, that whenever they forwarded claims for collection to the *Merchants' Exchange Bank* in *New-York*, and did not, within a few days after such claims arrived at maturity, receive information from that bank, that they were not paid, it had been their practice to charge that bank with the amount, and credit and pay the same to the individuals, by whom they were left for collection. It was also proved, that a similar usage prevailed in the other banks of this state.

Some time in the month of *September*, 1832, after the money in question had been paid to the defendant, the *East-Haddam*

*Middlesex,*
July, 1837.

The East-Had-
dam Bank,
*v*
Scovil.

*Bank* received a statement of an account from the *Merchants' Exchange Bank* in *New-York*, in which nothing appeared regarding this bill. The cashier of the *East-Haddam Bank* thereupon addressed a letter to the cashier of the *Merchants' Exchange Bank* requesting an explanation, and soon received an answer in return, that the bill had not been paid, but had been protested for non payment; and this was the first information or intimation, which the *East-Haddam Bank* had received of the non-payment of the bill. In a week or ten days afterwards, the cashier of the *East-Haddam Bank* informed *Ingham* of the non-payment of the bill, and of its protest; and some time in *October,* 1832, he gave a similar notice to the defendant, and inquired of him, if he would repay the money he had received, or whether he intended the bank should lose it; to which the defendant replied, "Lose it! Oh no, the bank shall not lose it." The cashier had several other interviews with the defendant on the same subject. At one of these the defendant said, "I will write to my brother, the drawer of the bill; and I will pay the bill as soon as he sends me funds from *London;* and he will send the funds as soon as I write him."

The plaintiffs proved, that it had not been usual for the *East-Haddam Bank* to endorse bills and notes, which were left with them for collection, and which were transmitted by them to the *Merchants' Exchange Bank* in *New-York*, for the same purpose. But the defendant introduced evidence to prove, and claimed he had proved, that it was a general usage among banks receiving negotiable paper for collection, and transmitting it for a like purpose to other banks, to endorse such paper by their cashier; and then, if it was not duly paid, notice of such non-payment was given, by the receiving bank to the forwarding bank, and also to drawers and endorsers: that if the places of residence of the endorsers were known, notices were forwarded to them; and if not known, notices were sent back to the forwarding bank, to be distributed and forwarded to such endorsers.

It was admitted, that the *East-Haddam Bank* did not advise the *Merchants' Exchange Bank* of the places of residence of the endorsers of this bill; nor was there any proof that any such usage prevailed among banks; nor that the place of resi-

dence of the endorsers was known to the *Merchants' Exchange Bank.*

From these facts the plaintiffs claimed, that the money so paid by the plaintiffs to the defendant, and by him received, was paid through mistake and misapprehension of facts; and that the defendant could not in good conscience retain it: that the plaintiffs had been guilty of no negligence or default of duty in respect to this bill; that they were not by law bound or obliged to give any other notice to the defendant of the non-payment of the bill than they had given: that if any other notice of non-payment was by law necessary, the defendant had received it: that the *Merchants' Exchange Bank* was not the agent of the plaintiffs in respect to this bill; and that the plaintiffs were not liable for any default or negligence of that bank in regard to it, if any such default or negligence existed, which they denied; and also, that if the plaintiffs had been guilty of default or negligence in respect to the bill, the defendant had no right to retain the money, unless he had sustained loss or damage by reason thereof.

The defendant claimed, that the plaintiffs had been guilty of negligence in respect of the bill, in not causing it to be endorsed by the cashier of the *East-Haddam Bank,* or in not forwarding to the *Merchants' Exchange Bank* the places of residence of *Ingham* and the defendant, the endorsers of the bill: that the *Merchants' Exchange Bank* were the agents of the plaintiffs, and not of the defendant; and that the plaintiffs were liable for the negligence and default of that bank: that the defendant was entitled by law to notice of the non-payment of the bill, in the same manner as any other endorser: that the plaintiffs had been guilty of negligence in giving notice that the bill was paid, and in paying over to the defendant the money, in the manner they had done, and had thereby thrown the defendant entirely off his guard, and prevented his using diligence or exertion for a long time, in recovering the amount of the bill from the acceptors: that the plaintiffs, by reason of their misconduct and negligence, had made the bill their own; and that in good conscience, the defendant was entitled to retain the money he had received thereon: that the defendant had in no respect waived any want of notice; and that any promise to refund the money made by the defendant, unless

*Middlesex,*
July, 1837.

The East-Had-
dam Bank
*v.*
Scovil.

made upon a new and sufficient consideration, would be of no avail, and invalid.

The court charged the jury, that if the plaintiffs paid to the defendant the money in question through a mistake and misapprehension of facts, and so that the defendant has no right in equity and good conscience to retain it, they are entitled to recover: that the plaintiffs by law were bound to exercise ordinary care and diligence in the exercise of their agency of collecting the bill in question: that they had right to transmit it to their ordinary correspondent, the *Merchants' Exchange Bank,* for this purpose: that they were not by law bound, either to endorse the bill, or to inform the *Merchants' Exchange Bank* of the places of residence of the endorsers: but in this respect, it was sufficient, if they so transmitted the bill that the *Merchants' Exchange Bank* could have transmitted notices of non-payment, if this had been legally necessary, either to the endorsers directly, or to them indirectly through the *East-Haddam Bank,* according to the usage of banks in such cases: that the defendant was never liable to the *East-Haddam Bank,* as an endorser of the bill in question, and was not entitled to notice as endorser: that if the plaintiffs had been guilty of fault or negligence, in regard to the bill in question, they were not by law responsible for the negligence of the *Merchants' Exchange Bank:* that if any notice to the defendant, as endorser of this bill, had been necessary, the defendant could waive it; but that a conditional promise to pay the bill would not amount to such waiver: that in order to constitute such waiver, the jury must find, that the defendant, with a full knowledge of all the material facts regarding the bill, had made an absolute promise to pay it: that the plaintiffs had not made the bill their own, and were not precluded from a recovery in this case, by reason of their having given notice to *Ingham* that the money was standing to his credit, and by reason of its having been in fact paid to the defendant.   The court further instructed the jury, that if they should find, that the plaintiffs had been guilty of any such default or negligence in regard to the bill in question, as that the defendant had been prevented from collecting or recovering the amount of it from the parties liable to him upon the bill, then he in equity and good conscience ought to retain the money which had been paid to him; and in that case, the

jury ought to return their verdict for him; otherwise, for the plaintiffs.

*Middlesex,*
July, 1837.

The plaintiffs had a verdict, and the defendant moved for a new trial.

The East-Haddam Bank
*v.*
Scovil.

*Hungerford* and *Ingham,* in support of the motion, contended, 1. That the plaintiffs were the agents of the defendant in the collection of the bill. *Bank of Washington* v. *Triplett* & al. 1 *Pet.* 25. *Bank of Utica* v. *McKinster,* 11 *Wend.* 473.

2. That the *Merchants' Exchange Bank* were the agents of the plaintiffs. They received the bill as the property of the plaintiffs, and were accountable to the plaintiffs alone. The defendant knew nothing of that institution; and had nothing to do with it. Consequently, the plaintiffs are responsible for the acts or omissions of the *Merchants' Exchange Bank* no less than for their own.

3. That the plaintiffs having received the bill of the defendant for collection, assumed to do every thing necessary to preserve his rights.

4. That the plaintiffs and their agents have been guilty of negligence. First, in not indorsing the bill, before it was sent to the *Merchants' Exchange Bank,* and in not informing that bank of the places of residence of the indorsers. Had the cashier of the *East-Haddam Bank* indorsed the bill, in the customary manner, it would have appeared from the bill itself from whom it was received, by the *Merchants' Exchange Bank.* If this was not done, the collecting bank should have been informed of the places of residence of the indorsers. Secondly, there was an entire omission on the part of both the banks, to give notice of the dishonour of the bill to the defendant. Thirdly, the plaintiffs were in default in notifying the defendant that the money was placed to his credit and subject to his disposal. They had no right to do any thing to lull the defendant into security; and could not do it, without making the bill their own. *Smith* & al. v. *Mercer* & al. 6 *Taun.* 76. *Wilkinson* & al. v. *Johnson* & al. 3 *Barn. & Cres.* 428. (10 *Serg. & Lowb.* 140.) *Camidge* v. *Allenby,* 6 *Barn. & Cres.* 373. (13 *Serg. & Lowb.* 201.) *Cocks* & al. v. *Masterman* & al. 9 *Barn. & Cres.* 902. (17 *Serg. & Lowb.* 517.) *Davies*

v. *Watson* & al. 2 *Nev. & Man.* 709. (28 *Serg. & Lowb.* 377.)   *Salem Bank* v. *Gloucester Bank,* 17 *Mass. Rep.* 1.

*Baldwin* and *Bulkley,* contra, contended, 1. That money paid under a misapprehension of facts, is recoverable, if the receiver cannot in good conscience retain it.   *Bize* v. *Dickason* & al. 1 *Term Rep.* 287.   *Buller* v. *Harrison, Cowp.* 565. 2 *Saund. Pl. & Ev.* 215.

2. That all that was required of the plaintiffs in forwarding the bill, was, to give such information that the receiving bank might know from whom it was received.   The form in which this was done, whether by indorsement on the bill, or by enclosing it in a letter, is immaterial, if the necessary information was communicated.   Such information the *Merchants' Exchange Bank* surely had.

3. That the plaintiffs having transmitted this bill to the *Merchants' Exchange Bank,* for collection, in the usual course of business, the latter bank became the agent of the defendant ; and was not responsible to the plaintiffs.   *Lawrence* & al. v. *The Stonington Bank,* 6 *Conn. Rep.* 521.

4. That the defendant being owner of the bill, was not chargeable as indorser ; and as such, was not entitled to notice.

5. That the defendant has not, and could not have sustained any injury, by the want of notice.   The condition of the parties liable on the bill, is not changed.   The drawer had notice. The acceptors are liable at all events.

6. That if there has been any irregularity in regard to notice, the defendant has *waived* it.

HUNTINGTON, J.   No exception has been taken to the instruction to the jury, that money paid by mistake, and under a misapprehension of facts, and where no laches are imputable to the plaintiff, (in respect to his omission to use the means of knowledge within his power) and when in equity and good conscience the defendant cannot retain it, can be recovered back.   *Milnes* v. *Duncan,* 6 *B. & C.* 671.   Indeed, the principle involved in this instruction, has become almost an axiom in the law ; and is as just in itself, as it is fully supported by authority.   Nor does any just exception exist to the charge, that the plaintiffs were bound to exercise due and ordinary care and diligence, as agents, in collecting the bill in

Middlesex,
July, 1837.
———
The East-Had-
dam Bank
v.
Scovil.

question ; for this is the contract which the law implies, from the relation subsisting between the parties to this suit, who differ as much, perhaps, in the application of the legal principles which are to govern our decision, as in their views of the principles themselves.

The defendant insists, that the plaintiffs were guilty of negligence in several particulars.

1. In not indorsing the bill, previous to forwarding it to the *Merchants' Exchange Bank ;* or, at least, in not informing the latter bank, of the places of residence of the indorsers. We believe it is a general practice of the banks in this state, when they transmit bills or notes for collection, to indorse them, by their cashier ; but we are ignorant of any rule of law which requires it. The only benefit resulting from such a practice, is, that the note or bill, when so indorsed, will itself show from whom it was received, by the collecting bank. This, however, would seem to be of no importance to those interested in the bill ; for it is to be presumed, the bank employed to make the collection, will preserve the letter of advice accompanying the bill, or cause such entries to be made in their books, as will show from whom it was received. This would be done, as well for their own security, as on account of the courtesy due their correspondents. In the present case, the bill was forwarded, by the plaintiffs, in a letter dated " *East-Haddam Bank, July* 12th, 1832," and signed by the cashier ; and when received, there was noted on it, " for the *East-Haddam Bank.*" None of the parties to this bill were injured, or could have sustained any loss, by reason of the omission, on the part of the plaintiffs, to indorse the bill. The law does not impose the duty of indorsing a bill, on the bank who receives it merely to be transmitted for collection. Such a duty might become extremely onerous ; for if their indorsement was in blank, they might be subjected, at the suit of a *bona fide* holder, for value, who should become possessed of the bill, before it came to maturity. Nor does the law require the bank who forwarded the bill for collection, to communicate the places of residence of the indorsers. Such information is necessary only to enable the collecting bank to give due and reasonable notice to the parties, of the dishonour of the bill, if not paid according to its tenour ; and this object can be as effectually attained, without information of the places of residence of the indorsers, as

*Middlesex,*
July, 1837.

The East-Had-
dam Bank
*v.*
Scovil.

with it.  If the forwarding bank transmit the bill to their cor-
respondents, in such a manner, and with such information as
will enable the latter to send notices of dishonour (when ne-
cessary) to all the parties directly, or indirectly through the for-
warding bank, *according to the general and known usages of*
banks in such cases, (and this duty the law imposes) the holder
is made as secure in his legal rights to resort to the previous
parties, as if the bill had been indorsed, and the residence of
each of those parties had been communicated, by the bank,
to whom it was first delivered for the purpose of collection.
*Baldwin* v. *Richardson* & al. 1 *B. & C.* 245.   *Scott* v. *Lif-
ford,* 9 *East,* 347.   *Langdale* v. *Trimmer,* 15 *East,* 291.
*Smith on Mer. Law,* 148.    *Hartford Bank* v. *Stedman* &
al. 3 *Conn. Rep.* 489.   *Holland* v. *Turner,* 10 *Conn. Rep.*
308.

The motion states, that, in the case before us, the bill was
sent, by the plaintiffs, to their correspondents, who knew from
whom they received it, and who had the necessary information
to enable them to transmit, through the plaintiffs, the proper
notices to all the parties to the bill, if they were required at all.
The plaintiffs, who received the bill for collection merely, trans-
mitted it, in due time, to their only correspondent in the place
where it was payable—a bank in good credit, and on whose fi-
delity reasonable confidence was reposed—accompanied with
information of every fact necessary to secure the rights of the
defendant.   No negligence was imputable to them.   Up to the
period when the bill came to maturity, the plaintiffs had dis-
charged all the obligations which they had contracted to the
defendant, by the receipt of the bill for collection.   Have they
omitted to perform any duties imposed upon them, at a subse-
quent period ?   Or have they so conducted as that the defend-
ant can justly, and in good conscience, retain the money
sought to be recovered of him, in this action ?

2. It is claimed, by the defendant, that the *Merchants' Ex-
change Bank* were the agents of the *plaintiffs,* in the collec-
tion of the bill, and not the agents of the defendant ; that the
plaintiffs are responsible for the default of the collecting bank,
who, it is insisted, were bound to give notice to the indorsers,
of the dishonour of the bill, either directly, or indirectly through
the plaintiffs : and having failed to do so, the defendant can
equitably retain the money which has been paid to him.

If the defendant has suffered an actual loss, by reason of the want of notice, we should not say he was without remedy as against the *Merchants' Exchange Bank ;* nor do we decide that their omission to give notice, would not subject them to an action in favour of the defendant, in which nominal damages might be recovered, although no real damage had been occasioned by their neglect. *Van Wart* v. *Wooley* & al. 1 *M. & M.* 520. That bank was guilty of negligence, in not notifying the plaintiff, or the defendant, of the dishonour of the bill. And we do not say the defendant has sustained no real injury; although it appears the drawer was duly notified, and the acceptors, "before the bill became due, and ever since, were and have been, and now are, insolvent and wholly unable to pay the bill." The facts which may have a bearing on this point, do not appear upon the motion. The defendant, though in form an indorser, was clearly not entitled to notice, strictly *as indorser,* as in ordinary cases; for the bill was his own; he indorsed it for the purpose of collection only ; and therefore, no necessity existed to give notice to fix a liability upon him, to any subsequent holder. Notice to him was to be given in a reasonable time, not as indorser, but as holder, and to enable him to avail himself of any means within his power, to secure the eventual payment of the bill to himself. We do not, however, deem it necessary to express an opinion upon the questions which may arise between the defendant and the *Merchants' Exchange Bank.* Our enquiries are confined to the claims of the parties before us. The jury have found, under the direction of the court, that the plaintiffs have not been guilty of any such default or negligence in regard to the bill, as that the defendant has been prevented from collecting or recovering the amount of it from the parties liable to him. If the defendant has suffered a loss, by reason of the default of the *Merchants' Exchange Bank,* he cannot look to the plaintiffs for a reimbursement, unless they are responsible for the acts and omissions of the bank in default. And he insists, that the *Merchants' Exchange Bank* were the agents of the plaintiffs, for whose fidelity, in every thing relating to the collection of the bill, they are responsible to him. We do not yield our assent to this claim. We think it has no foundation in principle, and is unsupported by authority. The plaintiffs' place of business was *East-Haddam.* The bill was payable in the city of *New-*

*Middlesex,*
July, 1837.

The East-Haddam Bank
*v.*
Scovil.

*Middlesex,*
July, 1837.

The East-Haddam Bank
*v.*
Scovil.

*York.* It was necessary that it should be transmitted to the latter place for collection. These were facts known to the defendant; who also must have known that the plaintiffs could do no more than transmit it to the city of *New-York*, to a reputable correspondent, and according to their usual course of business, to be collected. All this was done by the plaintiffs· Under such circumstances, it cannot justly be claimed, that the plaintiffs should have become insurers against the defaults of their correspondents. Such a doctrine would be as inequitable, as it might be oppressive and ruinous to banks, who are merely the medium through which the holders of bills and drafts payable in other states, transmit them for collection. If they act in good faith in the selection of an agent to protect the interests of the holder of the bill, in cases where it is obvious an agent must be selected for such purpose, what principle of justice or commercial policy requires, that they should be held liable for any neglect of duty on the part of such agent? To impose this liability, would make a special contract excluding it necessary, in all cases; or it would render the collection of bills of this description, extremely difficult. It would tend very much to destroy the facilities which at present exist, of making collections through the agency of banks, and subject the holders of bills to inconvenience and expense, and probably, in many cases, to serious loss. The mode now adopted and in general use, is well calculated to insure collections with promptitude, at a trifling expense, and without trouble to the holder. It is highly reasonable he should assume the risk of the defaults of the collecting agent, rather than the bank, who merely transmit the bill, and select the agent, with the consent of the holder, and with a perfect knowledge on his part, that such selection must be made; and when the power is exercised in good faith, and with reasonable care, and according to general usage. The views we have thus expressed, so eminently just, and so well calculated to protect the rights of all concerned, are sanctioned, by many adjudications of high authority. *Lawrence* v. *Stonington Bank*, 6 *Conn. Rep.* 521. *Smedes* v. *Utica Bank*, 20 *Johns. Rep.* 372. *Bank of Washington* v. *Triplett* & al. 1 *Peters* 25. In *Van Wart* v. *Wooley* & al. 3 *B. & C.* 439., the court, in giving judgment, say:—" *Irving & Co.* residing in *America*, had employed the plaintiff, residing at *Birmingham*, to purchase

hardware for them in *England*, by commission. By accepting this employment, he became, as between him and them, their agent. They then send him the bill in question as a further remittance on account of their order for hardware. The bill is drawn upon persons residing in *London :* the plaintiff, therefore, could not have been expected to present the bill himself; it must have been understood, that he was to do this through the medium of some other person. He employed, for that purpose, persons in the habit of transacting such business for him and others, and upon whose punctuality he might reasonably rely. In doing this, we think he did all that was incumbent upon him, as between him and *Irving & Co. ;* that he is personally in no default as to them, and is not answerable to them for the default of the persons whom he employed under such circumstances."

3. It is further urged by the defendant, that the plaintiffs were guilty of negligence in not obtaining earlier information of the dishonour of the bill, and communicating it to the defendant; at least, that they were in default in notifying him that it was collected and the proceeds were at his disposal : that in consequence of these acts and omissions, and the payment of the money to him, he was "thrown entirely off his guard," and prevented from taking any measures to obtain payment or security from the previous parties to the bill ; and therefore, the plaintiffs have made the bill their own ; and in equity, the defendant ought to retain the money. To this claim it would be sufficient to reply, that the jury have found, that the defendant has not been prevented from collecting or recovering the amount of the bill, by reason of any default or negligence *on the part of the plaintiffs.* If he has lost nothing in consequence of the acts or omissions of the plaintiffs, it is not easy to discover the equity of his claim to appropriate the plaintiffs' money to his own use. If his supposed right to retain it, is founded upon a presumed loss arising from the misconduct of the plaintiffs, all pretence of such right is removed, when it is found no such loss has in fact been sustained. Independent, however, of the finding of the jury on this point, we think the position taken by the defendant's counsel cannot be maintained. The plaintiffs were perfectly justified in paying the money, under the circumstances disclosed in the motion. According to their usage, (which is similar to that which prevails among

*Middlesex,*
July, 1837.

The East-Haddam Bank
*v.*
Scovil.

*Middlesex,*
July, 1837.
———————
The East-Had-
dam Bank
*v.*
Scovil.

the other banks in this state,) whenever they forward bills for collection, and do not, within a few days after they arrive at maturity, receive information that they are dishonoured, they charge the amount to the bank who hold them for collection, and credit and pay it to those who have deposited them for collection. Such an usage is reasonable and ought to be sanctioned; and from the facts admitted, must be presumed to have been known to the defendant. *Dwight* & al. v. *Whitney,* 15 *Pick.* 179. It is well adapted to promote the interests of the holders of negotiable paper, and, in general, can occasion no injury to them. It cannot be required of banks, who are mere agents to transmit to others bills for collection, to obtain information from their correspondents, of the payment of all the notes, bills and drafts which they forward, *as soon* as the time of payment arrives and they are paid; nor can it be expected, that the collecting banks will subject themselves to the burden which the continuance of such a correspondence would impose. Hence, it has been a known and general practice for the bank, which forwards for collection, to consider the bills as paid, when not notified to the contrary. In the present case, the plaintiffs acted in conformity with this usage. The bill was payable *July* 28th. On the 10th of *August,* the plaintiffs having received no notice of its dishonour, and supposing it to have been paid, and a credit therefore given to them on the books of the *Merchants' Exchange Bank,* gave a similar credit on their books to *Ingham,* (who had indorsed and sent it to them, at the request and for the accommodation of the defendant,) and advised *Ingham* accordingly, on whose check in favour of the defendant, dated *August* 11th, the money was paid to him. Some time during the month of *September,* it was ascertained, by the plaintiffs, that the bill had been protested, and remained unpaid; and within a week or ten days after they had knowledge of this fact, it was communicated to *Ingham,* with notice of the facts regarding the protest, and the payment of the money to the defendant; and some time in the month of *October,* a similar notice was given to the defendant of all these facts.

It appears, then, that the plaintiffs waited a reasonable time after the bill came to maturity, before they paid the avails to the defendant: that within a short time afterwards, and as soon as they were put upon enquiry as to the fact regarding the non-

payment of the bill, they sought and obtained the requisite information, which was communicated, without any unreasonable delay, to the defendant.    The plaintiffs have acted throughout, with entire good faith; have proceeded in the usual manner, and in accordance with a general usage; have been in no default; by mistake, and by reason of a misapprehension of the facts, not the result of their negligence, and without their laches, they have paid their money to the defendant, which no principles of equity known to us, will justify him in withholding from the plaintiffs, and which, in good conscience, he ought to refund.    The verdict which restores it to them, is sustained by the rules of law and the soundest principles of morality and fair dealing, and ought not to be disturbed.

The view which has been taken of the case, renders it unnecessary to express an opinion upon the question of waiver, which has been argued before us; and we wish to be understood as not intimating any opinion as to that part of the instruction, which has reference to that subject.    Whether an *absolute promise* to pay a dishonoured bill, is indispensable to constitute a waiver of legal notice, we do not decide.    A correct decision of the case before us, does not require it.    We leave that point open for examination, whenever it may become necessary to consider it.

The motion for a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.