Sutliff, J.,
dissenting:
I am unable to concur in the opinion expressed in this case, and will here state the grounds upon which I dissent.
The bill of exchange or draft upon P. H. Buckingham & Co., of New York, for the $500, it is admitted by the agreed statement, was the property of the plaintiffs, when sent to the cashier of the Commercial Bank. It was put into the possession of that bank to be collected by their agency for the plaintiffs. ’When forwarded to the American Exchange Bank, and while held by that bank, it continued to be the property of the plaintiffs, and was, in fact, *485 evidence of that amount of money in hands of the drawees belonging to the plaintiffs, the drawers; and I maintain that in law, as well as morals, the money, when paid, belonged to the plaintiffs; and a right to demand and receive it of whomsoever held, remained to the plaintiffs. If the draft had been put into the hands of an attorney for collection, by the bank at Toledo, or the bank at New York, and the money thereby collected, the plaintiffs would have had the right to demand and receive the money so collected of the attorney. If the attorney had deceased before paying over the money to the bank from which he had received the draft, the plaintiffs, upon proof of the facts of the case, could have recovered the money from the executor or administrator of the attorney. It is true that if the money had been remitted by the American Exchange Bank to the Commercial Bank before notice and demand by the plaintiffs, their right of action would have been lost against the American Exchange Bank, just as in this case, and just as it would have been in the case supposed against an attorney collecting the money, if he had before notice and demand paid it over to the bank from whom he received the draft. And I think this results from the fact that the money which the draft expressed before paid, when paid remained the property of the plaintiffs in the hands of whomsoever held the fund, in the same sense as it belonged to them while in the hands of Buckingham & Co., and while the draft remained unpaid.
If this is not true, that the money, when paid in upon the judgment, and when receipted by the attorney from the clerk or sheriff’ and so on, in whosever hand it chanced to be, continued of right to be a credit of the plaintiffs, in the hands of the holder of the funds, it must follow that the title of plaintiff's in the draft and in the credit while unpaid by the drawees, had passed from the plaintiffs to the Commercial Bank. But when did the title pass ? Certainly not on indorsement and delivery of the draft, for neither.the plaintiffs nor the Commercial Bank regarded *486 the draft as sold to or purchased by the bank. The Commercial Bank entered in their book the memorandum of having received the draft for collection; and the plaintiffs do not seem to have treated it as any thing different than a delivery to the bank for collection. And certainly, the draft, until paid, remained entirely at the risk of the plaintiffs. If the draft had been burnt, or had miscarried when forwarded by mail, or if the drawees had become insolvent, so that at maturity only part of the amount could be collected, or so that nothing could be collected on the draft, the loss would have all fallen on the plaintiffs and not upon the Commercial Bank.
But it is insisted that the fact of the American Exchange Bank having placed the amount, when collected by that bank, to the credit of the Commercial Bank, was equivalent to paying over the money to that bank.
If this be so, I will concede that the judgment in this case is right, for I do not pretend an action can be maintained for the money if it ever in fact passed to the Commercial Bank. But the statement of facts shows that the money was paid into the American Exchange Bank on the 21st of November, and there is nothing in the statement to show that any part of the amount had afterwards, and before the 27th of that month, been paid over or remitted to the Commercial Bank. But there is an express statement that, at the time of the failure of the Commercial Bank on the 27th, it had a balance on the books of the American Exchange Bank of $10,537.45, and which must, from all that is shown in the statement, have been made up, in part, by the amount collected upon the draft upon Buckingham & Co. It is true that in the conclusion of the agreed statement, it is said that there was remitted by the Commercial Bank to the American Exchange Bank, after the 21st day of November, a very much larger amount than the balance due from said American Exchange Bank to the Commercial Bank at the time of failure. But this, however adroitly introduced, really signifies nothing. *487 There is no statement of the amount during the same time remitted by the American Exchange Bank to the Commercial Bank, nor whether the amount so remitted to the American Exchange Bank entered into their account, of which the balance is so stated. If at any time previous to the assignment of the Commercial Bank from the time of the collection of the draft there had not existed a balance upon the books of the American Exchange Bank in favor of the Commercial Bank equal to the amount so collected upon the draft, it was a material fact for the defense, and would have been as easily, and doubtless more readily stated, than the amount of remittance, which could only have been stated as a circumstance tending possibly to such an inference.
But we all agree, in this case, that the merits of the suit are the same that they would have been had the suit been instituted against the American Exchange Bank by the plaintiffs previous to the defendant so receiving the balance due from that bank to the Commercial Bank. If, upon the 28th day of November, 1846, the plaintiffs had the right to demand and receive from the American Exchange Bank, the amount received by that bank upon their said draft, we are unanimous in opinion that the plaintiffs ought to recover in this action.
Nor can the case be regarded as at all to the prejudice of the plaintiffs that the American Exchange Bank had carried the amount collected upon the draft to the credit of the Commercial Bank in a general account with other credits, that the $500 so collected upon the draft, instead of being the only credit given to the Commercial Bank by the American Exchange Bank, showing simply a balance of $500 on the 28th of November, constituted a part of the larger balance of $10,537.45, so in fact existing. This follows from the fact that money, having no ear mark, neither the attorney collecting, nor the bank receiving the money upon the draft, if liable at all, would be liable for the identical money collected, but only for the like amount *488 of money so collected and belonging to tbe plaintiffs. Eor illustration, suppose the American Exchange, in one case, to have given no other credit to the Commercial. than that for the $500, and to have had no other dealings with that bank, that fact would only give a right of action for 'money had and received in favor of the party to whom the money belonged. But suppose, again, that the entire amount of the $10,537.45, except the $500 so collected upon the draft, had been, by the American Exchange Bank, paid over to the assignee or creditors of the Commercial Bank, obviously the bank so then retaining the $500 would have stood in precisely the same relation to the plaintiffs as in the case first supposed. It follows, therefore, that the fact of there having been large dealings between the two banks, and a balance of $10,537.45 against the bank so having received the $500 of plaintiffs’ money upon their draft, does not at all affect the question. The case, then, remains, and is to be regarded precisely as if the only dealings between the two banks had been the collection of the $500 upon the draft on the part of the American Exchange Bank and setting the same to the credit of the Commercial Bank, and that this suit had then been brought against the bank so holding the money for its recovery. And, under such circumstances, it seems to me that no unsophisticated mind could hesitate, if asked to whom that credit honestly belonged, in answering that it belonged to the owners of the draft, unless the property be changed hy some subtle rule of law. And if such change of property has been effected by any rule of law, it obviously has been done without any consideration received by plaintiffs, and results in wrongfully depriving them of their own, .and must be certainly a sorry illustration of the maxim, that law is the perfection of reason. But I deny that the law, when properly understood and applied to this case, is obnoxious to any such reproach. By the most unanswerable reasoning, and that common sense of right entertained by every one, and, as I verily believe, by the *489 best precedents and authorities in law, the plaintiff's in this case ought to recover.
No one will pretend that any different rule obtains in this case by reason of artificial persons, banks, being parties. . Apply the state of facts presented in this case to natural persons, and let us see the result. Suppose these plaintiffs to have forwarded their draft to an attorney or a broker at Toledo for collection, and the person so receiving the draft had forwarded it to an attorney in New York for collection, who had collected it and set the same to the credit of his correspondent, and the man to. whom the draft had been sent at Toledo had died insolvent; the .plaintiffs in that case would or would not be entitled to demand and receive from the attorney collecting their draft the amount so collected and held by him. If the plaintiff's would, in that case, be entitled to the money so collected upon their draft, and held by the attorney at New York, in preference to the administrator of the insolvent lawyer or broker at Toledo, then are the plaintiffs entitled to recover their demand in this case. But if, under such circumstances, the plaintiff's could not recover, but in law the money would belong to the administrator of the insolvent lawyer or broker to whom the draft had been so sent for collection, then, in such case, and not otherwise, I concede the plaintiff's, are not entitled to recover in this suit. But I think a denial of their right to recover in the case supposed would he regarded as a manifest wrongful deprivation of their money.
But let us recur to the precedents and authorities which should govern the case. And, firstly, I will recur to the rule in this state. Eor if a rule has been established in this state, it is entitled to respect, and should goVern this case, unless such rule fails to do justice between the parties, and for that cause may be set aside by a new rule to be established more in accordance with justice.
The case of Gordon v. Kearney, 17 Ohio Rep. 572, presents nearly the same question presented in this- case. *490 Gordon had indorsed his draft to Warrick, Martin & Co., bankers at Pittsburgh, for collection; and they indorsed and forwarded the same to Kearney, a broker at Zanesville ; an,d Warrick, Martin & Co., who shortly after became insolvent, being indebted to Kearney in more than the amount of the draft forwarded to him, the defendant was notified shortly after, that the draft belonged to plaintiff, and was requested to return it. But the defendant refused to do so, and collected the same, carrying the amount to the credit of Warrick, Martin & Co., and the plaintiff brought suit to recover the amount. The majority of the court were of opinion that, under the circumstances, the plaintiff was not entitled to recover. In pronouncing the opinion,; Judge Birched, after remarking that “ it looks like a hardship for the actual owner of the bill to lose it for the bare error of intrusting its collection to irresponsible money brokers,” says: “ It would be equally a case of hardship if the defendant should be compelled to lose the amount, when but for the credit by this means given to Warrick, Martin & Co., he would probably have taken measures to secure the balance of account due him. The rule in such cases is, that when one of two persons must sustain loss, he shall be the sufferer who placed the means of imposition in the hands of the wrong-doer. Between two innocent persons, he shall suffer who incautiously gave the means of obtaining the false credit.” And the judge then refers to the doctrine held in the case of The Bank of the Metropolis v. The New England Bank, 17 Pet. Rep. 174, as expressing the rule recognized and followed by the court in the opinion expressed.
It is thus seen that the Supreme Court of this state, in the case referred to, clearly recognized the right of the owners of a draft indorsed and forwarded for collection to a party, and by that party indorsed and forwarded to another party, who collected the same, to maintain an action for the recovery of the money against the party so collecting the draft, as in this case; and that right of re *491 covery was suffered to be defeated by the defendant only by showing in himself an equitable claim to tbe money paramount to the legal right of the plaintiff, the owner of the draft. No one can read that case without perceiving that the only cause preventing a recovery by the plaintiff in the case was the fact that the balance was in favor of Kearney as between him and "Warrick, Martin & Co., from whom he had received the draft, and credited the proceeds when collected. Had not Kearney set up this equitable defense, the court, recognizing as they did the legal right of Gordon, the owner of the draft, to the proceeds after collected by Kearney, would have given judgment in his favor as a matter of course. And under the opinion of the court expressed in that case, it would be absurd to say that, if the balance had been against Kearney, and in favor of "Warrick, Martin & Co., so as to make the case parallel with this, the court would have suffered the assignee of Warrick, Martin & Co., after their insolvency or bankruptcy, to have recovered the money from Kearney against the claim of Gordon.
The facts in the case of the Bank of the Metropolis v. The New England Bank, 17 Pet. Rep., were quite similar to those in the case of Gordon v. Kearney, but with the additional proof that the course of dealing between the Bank of the Metropolis and the Commonwealth Bank had been to mutually remit for collection such promissory notes or hills of exchange as either might have, payable in the vicinity of the other; which, when paid, were credited to the party sending the same in the account current kept by such bank, and regularly transmitted from one to the other, and settled accordingly. On the 24th of November, 1837, the Bank of the Metropolis was indebted to the Commonwealth Bank in the sum of $2200; and in the latter part of that year, the Commonwealth Bank transmitted to the Bank of the Metropolis for collection in the usual way, notes, drafts, etc., falling due in the ensuing months of February, March, April, May and June, indors *492 eel by G. P. Clark, cashier of New England Bank, to C. Hood, cashier of Commonwealth Bank, and by the latter indorsed to G. Thorn, as cashier of the Bank of the Metropolis. On the 13th of January, 1838, the Commonwealth Bank failed, and on that day the cashier of that bank wrote a letter to the Bank of the Metropolis directing them to hold the paper which he had forwarded as mentioned, “ subject to the order of the cashier of the New England Bank, it being the property of that institution.” "When this letter was received, the account between the Commonwealth Bank and the Bank of the Metropolis exhibited a balance in favor of the latter in the sum of $2900; and the Bank of the Metropolis thereupon insisted upon their right to apply the proceeds of such paper toward the payment of said balance. The New England Bank brought the suit against the Bank of the Metropolis in the circuit court and recovered judgment for the amount of the proceeds of the notes and bills of exchange. To reverse that judgment, the case was brought before the supreme court by a writ of error. Chief Justice Taney, in delivering the opinion of the court, used the following language: “ If this were a question between the two Boston banks, and the case depended upon their respective rights, the plaintiff’ in the court below would undoubtedly have been entitled to recover,” etc. And yet the Bank of New England stood in precisely the same relation to the Commonwealth Bank that the plaintiffs in this case would towards the Commercial Bank, if the balance had been in favor of the American Exchange Bank instead of against that bank, and the proceeds of the draft applied upon such balance. The holding of the supreme court of the United States in the case referred to, would, therefore, determine, under the application of the same rule to this case, the right of the plaintiffs to the proceeds of the draft while in the hands of the American Exchange Bank, as against the right of the Commercial Bank, and of course as against the assignee of that bank, to the proceeds of the di-aft.
*493 The same doctrine is maintained by the supreme court of the United States in the case of Wilson & Company v. Smith, 3 How. 763. The facts in that ease were as follows: The plaintiffs wore the owners of a draft drawn by Henry B. Holcombe of Augusta, Georgia, upon one Charles E. Mills of Savannah, and placed the same in the hands of Daniel "W". St. John, at Augusta, as their agent, for collection. St. John forwarded the same to his agent, Smith, at Savannah, for acceptance and collection. The di'aft was accepted and paid to Smith, the defendant, and credited by him to the account of St. John, who was at the time indebted to him, Smith. "When the draft was so sent to Smith he was not apprised to whom it belonged, nor were any directions given him as to the money when collected. The suit was brought under these circumstances by the plaintiffs, as the owners of the draft, against Smith, for the amount collected by him thereon. The case was certified into the supreme court from the circuit court. Chief Justice Taney, in pronouncing the opinion of the court, at the January term, 1845, said: “ It is admitted that the bill was the property of the plaintiffs, and was transmitted to St. John at Augusta for collection, and by him transmitted to the defendant at Savannah, where the drawer resided, and that no consideration was paid for the bill, either by the defendant or St. John. According to the usual course of dealing among merchants, the transmission of the paper to St. John gave him an implied authority to send it for collection to a sub-agent at Savannah; for it could not have been expected by the plaintiffs that St. John was to go there in person, either to procure the acceptance of the bill, or to receive the money, nor could St. John have so understood it. So far, therefore, as the question of privity is concerned, the case before ns is precisely the same with that of the Bank of the Metropolis v. The New England, Bank. * * * Upon referring to the case, it will be seen that the court entertained no doubt of the right of the New England Bank to maintain the action *494 for money had and received against the Bank of the Metropolis ; and the difficulty in the way of its recovery was not a want of privity, but arose from the right of the Bank of the Metropolis to retain, under the circumstances stated in the case, for its general balance against the Commonwealth Bank. "We think the rule very clearly established, that whenever, by express agreement between the parties, a. sub-agent is to be employed by the agent to receive money for the principal, or where an authority to do so may fairly be implied from the usual course of trade, or the nature of the transaction, the principal may treat the sub-agent as his agent, and when he has received the money, may recover it in an action for money had and received. * * * The right to retain in that case depended upon the fact that credit was given. But in the case at bar, (eontinues_ the Chief Justice), this fact is expressly negatived, and there is no ground, therefore, upon which he can retain, according to the principles decided in the case referred to.”
Under a fair application of this rule of law thus expressed by the supreme court of the United States, and adopted by the supreme’ court of this state in the case of Gordon v. Kearney, there could be no doubt of the plaintiffs’ right to have recovered the amount received upon their draft from the American Exchange Bank at any time before that bank had paid it over to defendant. But I maintain that the rule I insist upon adhering to, is not only sustained by the high authority of the supreme court of the United States, but by other courts of the highest respectability; and was only adopted by that court as the law applicable to such cases, deduced from the weight of well considered opinions and authority in this country and in England.
. The case of Lawrence, etc., v. The Stonington Bank, 6 Conn. Rep. 531, in which the plaintiff was allowed to recover, was a much stronger case for a defense than the present case. The facts of that case were briefly as fol *495 lows: The plaintiffs, residing in the city of New York, on the 2d of September, 1825, drew a bill of exchange for $156 on P. Denison of Stonington, who was indebted to them in that sum, payable to their order twenty days after date, for the purpose of collection, indorsed it in blank, and lodged it in the Phoenix Bank in New York. The cashier of that bank indorsed the bill in blank, and sent it to the Eagle Bank of New Haven for collection; and the cashier of that bank indorsed it in blank and sent it to the Stonington Bank for collection. No consideration was paid by either of the banks, and they had no interest, except to collect and remit the avails. On the 20th of September, the Stonington Bank learned of the failure of the Eagle Bank, which was indebted to them in sixty dollars, and whose bills to the amount of $180 they had in possession. On the 25th of September, Denison paid to the defendants, the Stonington Bank, and was by them credited to the Eagle Bank. It was not known by the defendants that the bill of exchange was not the property of the Eagle Bank. On the 80th of September, the plaintiffs drew for the money, and also presented to defendants an order from the Eagle Bank, which being refused, the plaintiffs commenced suit to recover the same. The case was tried at Norwich, at the January term, 1827, before Daggett, J., who, upon the facts stated, gave judgment against the defendants. At the July term, 1827, the case came before the supreme court of that state for revision. O. J. Hosmer, in delivering the opinion of the court, remarked as follows: “ The defendants, to use the very appropriate expression of O. J. Eyre, were in privity with the Phoenix Bank, and the testimony, which was drdy admitted, shows that they have no title to the avails of the bill. All the indorsers were merely agents of the plaintiffs for the collection and transmission of the money. * * * .There is neither law nor equity in taking the plaintiffs’ property and setting it off against the demands due from the Eagle Bank. * * * * * * In conclusion (says the Chief *496 Justice), I would apply the expressions of Lord Mansfield in Buller v. Harrison, Cowp. 565, 568. No new credit was given, no acceptance of new bills, no alteration in the situation which theadefendants' and the Eagle Bank stood in towards each other, after the failure, or collection of the money. The defendants ought not to say, ‘ this is a hit; we have got the money and we will keep it.’ The Eagle Bank the defendants knew was insolvent. No prejudice has arisen to them from the collection of the bill; and, in common honesty, they ought not to shelter themselves from loss by casting their own misfortune on an innocent man, who ought not to bear it. In my opinion, the crediting of the money to the Eagle Bank does not alter the case a straw.”
The same doctrine is expressed by the supreme court of that state in the case of East Haddam Bank v. Scovil, 12 Conn. Rep. 303.
The decisions in the State of Massachusetts are to the same effect. See the case of Barker v. Prentiss, 6 Mass. Rep. 430; also, the case of Fabens v. Mercantile Bank, 23 Pick. 330. But in the latter case, it will be perceived, the note was received by the hank not only for collection, but as collateral security, and its proceeds, when collected, were to be applied upon the plaintiff’s note, held by, and payable to, that bank.
It is said, however, that the application of the rule expressed by the foregoing cases, and others which might be referred to, necessarily depends upon the question of agency; and that a recovery can only be had by the owner of the bill or draft, of the party collecting and holding the money upon it, when such holder of the money is the agent of the owner of the paper.
I do not so understand the law. The question of agency has not, necessarily, anything to do with the case. This action is one commonly denominated an action for money had and received. And who ever heard that the right to maintain that action depended, in such cases, upon the *497 relation of agency subsisting between the parties. I understand the law in such case to require no further privity of contract, or implied promise, to support the action, than what necessarily arises from the fact of the defendant having money belonging to the plaintiff and which he has not a right in equity and good conscience to retain. It is utterly immaterial to inquire whether the defendant received the money in the relation of agent, and then refused to pay over to his principal, or whether, being a stranger, he found the money or received it on deposit from a wrong doer, or, in short, in what manner he received the money'. It does not at all affect the right to recover that the defendant received the money rightfully; the action depends only upon the two facts, the right of property and the right of possession. If the money rightfully belongs to the plaintiff, and the defendant has not a right to retain it from him, the plaintiff has a right to recover in such an action; otherwise, he has not. See cases of Buller v. Harrison, Cowp. Rep. 565; Cox v. Prentiss, 3 M. & S. Rep. 344; Mowatt v. McLelan, 1 Wend. Rep. 173; Mason v. Waite, 17 Mass. Rep. 560, and Hall v. Marston, 17 Mass. Rep. 575. In the latter ease, C. J. Parker says: “ There are many cases in which that action (for money had and received) is supported without any privity between the parties other than what is created by law. Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to this action, although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has legal or equitable ground for retaining it, the law creates the privity and the promise.”
Indeed, the action for money had and received has always been regarded as peculiarly applicable to such cases as that under consideration. And the authorities even go to the extent to authorize the owner of goods sold by the factor who has collected payment, and become bankrupt, to recover the money so collected, if it had been kept apart *498 from other moneys by the factor. And so, too, if the factor sell goods for his principal and become bankrupt before payment, and the assignee of the bankrupt receive the payment for them (as they have the proceeds of the draft in this case), it has always been held, I believe, that the owner of the goods might recover of the assignees the amount in an action for money had and received. Upon the same principle, the owner is allowed to recover in an appropriate action from the assignee any goods or chattels of his held by the bankrupt, and passed to the assignee. See authorities Tooke v. Hollingworth, etc., 5 Term. Rep. 215; Rowton ex parte, 17 Ves. Rep. 426; Sollers ex parte, 18 Ves. Rep. 259; Godfrey v. Furzo, 3 P. Williams 185. Parsons’ Mercantile Law 302, and note upon same page.
So far then from the leading question in this case being, whose agent was the American Exchange Bank, in receiving and holding the money collected upon the draft, I regard that question as in nowise affecting the merits of this case; nor in any manner determinate of the right of the plaintiffs to recover in this action. Suppose it should be conceded that the view taken by the courts of New York, of the relation of the parties in such a case, is a more sensible one than that which obtains in the courts of Massachusetts, Connecticut, and in the supreme court of the United States and in England, if in fact there be any difference in the rule expressed by the authorities. Suppose all this be conceded, what follows ? Certainly, nothing further than that the plaintiffs in this case could not maintain a very different action from this, to wit, an action on the case, for negligence or misfeasance, against the American Exchange Bank, if a case should have arisen for such action.
I admit that, where one has undertaken with the owner to collect for him a bill, and for the performance of such undertaking has employed his clerk or some other person, Such clerk or person employed to present the bill, etc., may not be responsible, for his nonfeasance or misfeasance, *499 to the owner. The reason is obvious. There may, in such case, be no privity of contract between the employer of the agent and the owner. The clerk or person employed by the agent may have presented the bill at the precise time and place directed by his employer, and yet the obeying such instructions may have resulted in a loss of the bill to the owner. In such a case, there would evidently be wanting that privity of contract, between the owner and employee of the agent, necessary to enable the owner to maintain an action against the employee for nonfeasance or misfeasance. In such a case, the maxim, respondeat superior, might well apply. But in the case supposed, if the employer had collected the bill, and while retaining the money the agent had died or become bankrupt, I deny that the law is such that the owner could not, upon notice and demand, recover the money from the employee, as against the claim of the administrator or assignee of the agent for the same.
But this action being one for money had and received, and not an action to recover for damages sustained by the plaintiffs, by reason of any neglect or misfeasance of the American Exchange Bank in making the collection, the action might just as well have been sustained against that bank if it had continued to retain the money, not being the agent of the plaintiffs, as it could if it were such agent. Indeed, I know of no exception to the doctrine, that where an agent has received money from a third person for his principal, and the person from whom he has received the money, or to whom it belongs, becomes for any cause entitled to recall it, on notice to the agent before he has paid over the money to his principal, or any change in his situation on account of the receipt of the money has occurred, the agent is legally bound to repay the same to the person so having the right to reclaim the money. See 2 Liverm. on Agency 260, 261; Story on Agency, sec. 300, etc.
The cases, Allen v. Merch. Bank of New York, 22 Wend. Rep. 215; The Bank of Orleans v. Smith, 3 Hill’s Rep. 562; *500 Montgomery County Bank v. Albany City Bank, 3 Seld. Rep. 459, and Commercial Bank of Penn. v. Union Bank of New York, 1 Kern. 203 ; also the case of Faber v. Perrot, etc., and that of Mackasy v. Ramsays, 9 Clark and Ein., seem to me wholly irrelevant to the question arising in this case. Not one of the cases referred to was an action brought, like this, by the owner of a bill to recover the proceeds from the party holding the same. They were all cases turning upon the liability of a principal for the acts of his agent. Nor is there even a dictum in one of those cases expressing any disapprobation of the rule governing the right to recover, on the part of the owner of the bill, in an action against the party holding the proceeds of it, in such a case as the present. No authority has been found regarding the credit of the money given to the Commercial Bank by the American Exchange, as a paying over of the money to the Commercial Bank, so as to toll the plaintiffs’ right of action in this case. But the authorities are express to the contrary. Not a single authority is presented in conflict with the rule expressed by the decisions of the-courts of the States of Connecticut and Massachusetts, and by the supreme court of this state, in the case of Gordon v. Kearney, and by the supreme court of the United States, establishing the right of the plaintiffs to recover in this case.
I regard the departure from the rule so hitherto obtaining in this state, and, as I think, generally in other states, as much opposed to sound policy and good morals as it is to authority. It takes from the owner of eastern bills of exchange and drafts, all security for the payment of the money to him when collected, except the continued life and solvency of the party who does him the favor to transmit his paper to some responsible party east for collection. If the broker or lawyer so transmitting the bill, die before payment is actually received by the owner of the bill, the proceeds must, under this change of the rule, go into the hands of the administrator and there await the settlement *501 of his estate. And in case of the bankruptcy of the party so transmitting the bill for collection, the proceeds must, as in this case, necessarily pass to his assignee. Nor is the contemplated additional security, of making the party transmitting the paper liable in case of the insolvency of the party to whom transmitted for collection, any fair equivalent; as every one knows, even the most irresponsible parties here are careful to select responsible banks and persons, to whom to transmit .such paper, in the eastern cities. The result of the rule adopted by the majority of the court, it seems to- me, must be necessarily to deprive the owner, in all similar cases, as in this, of the money honestly belonging to him, but for at best an arbitrary principle of law, and giving to a party having no moral right to it, and whose legal right depends entirely upon the rule.
For the foregoing reasons, I am unable to concur in the opinion pronounced by the other members of the court in this case.