Marshall, Ch. J.,
 

 delivered the opinion of the ■court. — The material question in this case is, whether a person who indorses
 
 *93
 
 a promissory note for the accommodation of the maker, be discharged from the responsibility which the indorsement creates, by the failure of the holder to demand payment of the maker, in the usual time, and to give notice to the indorser that the note is not paid.
 

 That by the general rule of law, the omission to demand payment from the maker, when the note becomes payable, and to give notice to the indorser that payment has been refused, discharges the indorser, is admitted ; [*154 *but from this general rule of law exceptions exist, and the counsel L for the defendants in error contend, that the case stated is comprehended in one of these exceptions.
 

 It is laid down as an exception to the general rule, in its application to bills of exchange, that if the drawer has no effects in the hands of the drawee, notice of the dishonor of the bill may be dispensed with, and the case of an indorser of a promissory note for the accommodation of the maker, is said to come within the same reason and the same law. The correctness of this position will be best tested, by considering the reason of the rule, and the reason for the exception.
 

 Why is it that notice must immediately be given to the drawer, that his bill is dishonored by the drawee ? It is, because he is presumed to have effects in the hands of the drawee, in consequence of which, the drawee ought to pay the bill, and that he may sustain an injury by acting on the presumption that the bill is actually paid. The law requires this notice, not merely as an indemnity against actual injury, but as a security against a possible injury which may result from the
 
 laches
 
 of the holder of the bill. To this security, then, it would seem, the drawer ought to remain entitled, unless his case be such as to take him out of the reason of the rule.
 

 A drawer who has no effects in the hands of the drawee, is said to be without the reason of the rule, and therefore, to form an exception to it. This has been laid down in the books as a positive qualification of the rule, but has seldom been so laid down, except in cases where, in point of fact, the drawer had no right to expect that his bill would be honored, and could sustain no injury by the neglect of the holder to give notice of its being dishonored. In reason, it would seem, that in such cases only, can the exception be admitted, and that the necessity of notice ought to be dispensed with only in those cases where ^notice must be unnecessary, or immaterial to r*-i the drawer. L
 

 The reasoning of the judges, in most of the cases which have been cited, would seem to warrant this restriction of the exception. The case of
 
 Bickerdike
 
 v.
 
 Bollman
 
 was a bill drawn by a debtor on his creditor, without a single accompanying circumstance, which could raise an expectation that the bill would be accepted or paid. Notice in this case was declared to be unnecessary. Justice Ashhubst gives as a reason for this opinion, that the drawing was in itself a fraud. This reason must be considered as additional to the general ground on which the case was placed in the argument, which was, that the want of notice could not possibly affect the drawer. The particular reason given by Justice Ashhubst for his opinion, is clearly inapplicable to any case in which the drawer was justified in drawing. Into the opinion of Justice Buleer, some general reasoning is introduced, from which it is fairly deducible, that he considered the drawer as having no right to
 
 expect
 
 that the bill would be paid, and as being liable to no injury from the want
 
 *94
 
 of notice, and that these were the true grounds of the exception. He says,
 
 “
 
 If it be proved on the part of the plaintiff, that from the time the bill was drawn, till the time it became due, the drawee never had any effects of the drawer in his hands, I think, notice to the drawer is not necessary ; for he must know whether he had effects in the hands of the drawee or not; and if he had none, he had no right to draw upon him and to expect payment from him ; nor can he be injured by the non-payment of the bill, or the want of notice that it has been dishonored.” These observations were, in fact, applicable to the case, for the drawer was the debtor of the drawee, and had no right to draw the bill, nor reason to expect that it would be accepted.
 

 *This principle was recognised in
 
 Goodall
 
 v.
 
 Dolly,
 
 in which the same idea, so far as respects the impossibility of injury to the drawer, was repeated. This point came on again to be considered in the case of
 
 Rogers
 
 v.
 
 Stephens,
 
 2 T. R.
 
 713,
 
 in which, as between the drawer and drawee, there was no pretext of a right to draw. It was said, that a third person had stated himself to have funds in the hands of the drawee ; that the bill was really drawn on the credit of those funds, and that loss had been actually sustained from the want of notice. But these facts formed no part of the case. If they had, it is apparent, that, in the opinions of Lord Kenyon and Justice Grose, they would have been decisive in favor of the necessity of notice, unless that necessity had been dispensed with by the subsequent conduct of the drawer. Lord Kenyon states the reason why notice need not be given to the person who draws, without funds in the hands of the drawee, to be, “ because the drawer must know that he had no right to draw on the drawee.” The opinions of Lord Kenyon and Justice Grose in this respect, though not assented to, were not controverted by Justice Ashhurst. The decision in
 
 Rogers
 
 v.
 
 Stephens
 
 was made on the authority of
 
 Bickerdike
 
 v.
 
 Bollman.
 

 It would seem to be the fair construction of these cases, that a person having a right to draw, in consequence of engagements between himself and the drawee, or in consequence of consignments made to the drawee, or from any other cause, ought to be considered as drawing upon funds in the hands of the drawee, and therefore, as not coming within the exception to the general rule. The transaction cannot be denominated a fraud, for in such case, it is a fair commercial transaction. Neither can it be truly said, that he had no right to expect his bill would be paid, for a person authorized to draw, must expect his draft will be honored. *Neither can it be said, J that he has virtual notice of the protest, and that actual notice is useless, and the want of it can do him no injury; for this is only true, when, at the time of drawing, the drawer has no reason to expect that his bill will be paid. A person having a right to draw, and a fair right to expect that his bill will be honored, would not come within the reason of the exception, and, therefore, it may well be contended, ought not to be brought within the exception itself.
 
 [1]
 

 This doctrine appears to be contradicted in the case of
 
 Walwyn
 
 v.
 
 St. Quintin.
 
 In that case, the bill was drawn to accommodate the indorser, who had previously placed securities, on which he wished to raise money, in
 
 *95
 
 the hands of the acceptor ; but the drawer had no effects in his hands. It was determined, that, in this case, notice to the drawer was unnecessary. If this determination should be considered without examining the reasoning on which it was founded, the reader would conclude, that the single circumstance of drawing, without funds in the hands of the drawee, belonging to the drawer, subjected him, without notice, to the payment of his bill, if dishonored, at any period of time when not barred by the act of limitations ; and that no demonstration of his perfect right to draw, or of the loss to which the want of notice had exposed him, could relieve him from the claim of the holder of the bill. For, in this ease, the drawee having accepted on funds, the drawer had a right to expect that the bill would be paid, could not be chargeable with fraud in drawing, nor required to prepare other funds to prevent the disgrace and-injury of his bill’s being dishonored, or to take measures to secure himself against the acceptor or indorser. He does not appear to have come within any one reason assigned in the cases of
 
 Bickerdike
 
 v.
 
 Bollman,
 
 or of
 
 Rogers
 
 v.
 
 Stephens,
 
 for the exception stated in those cases to the general rule. *This induces the necessity of examining with particular attention the reasons given by the judge, L whieh must be considered as explanatory of the decision.
 

 In delivering the opinion of the court, Lord Chief Justice Eyre said,
 
 “
 
 the true fact is, that this was the acceptor’s bill, and not the drawer’s.” “ The transaction in this case was a mode by which the acceptor advanced a sum of money to the payee, and the drawer was a mere instrument of the acceptor.” “ It seems clear, that notice can be of no use to him, his situation being this, that if the acceptor do not pay, he must, and may then, and not till then, resort to the acceptor to be reimbursed. Notice, therefore, can amount to nothing, for his situation cannot be changed.”
 

 It is observable, that the principle supposed to be laid down in the cases previously adjudged as constituting the reason for the exception is here expressly recognised, and forms the great and operative motive for the judgment of the court. It is, that notice could be of no use ; that the drawer could not avail himself of it; that he could take no step which would in any manner change his situation ; that he could have no recourse against the acceptor, until he paid the bill. In no case is the reason of the exception more explicitly given, and the only difficulty is to apply the reasoning to the facts as reported.
 

 The court seem to have supposed, that since the drawer could not maintain an action against the acceptor, until he had taken up the bill, that it was perfectly useless to enable him, by proper notice, to employ those other various means which he might have taken to secure himself. Such is not the reasoning of the judges, in the cases previously decided ; and this reasoning certainly would not be permitted to apply to an indorser who had given value for the bill, not knowing that it was drawn without funds in the hands of the drawee. Tet he would be unable to recover from the drawer, until he had taken up the bill. *If an action could not have been r;!:, 5„ maintained, might not the drawer have effects of the drawee in his L hands, which he might retain ; or might not various other means of saving himself be neglected, in consequence of the opinion that the bill would be paid ? If this might be, how can it be true, that notice can be of no use to him ?
 

 
 *96
 
 If the fact even be, that the drawer could only sue the acceptor, in such a case as this, after having himself discharged the bill, still he ought to have notice, that he might immediately take it up for the purpose of proceeding against the acceptor. The reasoning of Lord Chief Justice Eyre, to be perfectly consistent with itself, and with the principles laid down in previous decisions, would seem to be predicated on an understanding on the part of the drawer, when the bill was drawn, that it was not to be paid by the acceptor ; or on the idea that a bill drawn without funds, is not a commercial transaction, and not subject to commercial rules. The presumptions are rendered the stronger from the cases afterwards stated, in which a drawer without funds in the hands of his drawee would still be entitled to notice. These are “ acceptances on the faith of consignments from the drawer, not come to hand,” and “ acceptances on the ground of fair mercantile agreement;” to which, he says, may possibly be added many others. If the exception admits of these exceptions and of many others, it would be difficult to apply it to any case of a fair transaction, where the drawer had really a right to draw, unless it be supposed not to be governed by the law - merchant.
 

 The judge next proceeds to describe the case in which notice is not requisite. He says, “ where the drawer has no effects, and has no fair pretence for drawing, or where he draws without effects intended to be applied *1601 ™ PaymenL an<I only *for the purpose of raising money by discount for -1 himself, and,
 
 d fortiori,
 
 for the acceptor, it is fairly deducible from the cases, that notice need not be given.” It is not only necessary that the drawer should have no effects, but also that he should have no fair pretence for drawing. Now, he may have a fair pretence, as in the case of a “ fair mercantile agreement,” without having any funds in the hands of the drawee, which notice of non-acceptance of the bill might enable him to withdraw ; and yet, in such case, it would appear, from the language of the court, that notice could not be dispensed with. “ Where he draws only for the purpose of raising money by discount for himself, and,
 
 d fortiori,
 
 for the acceptor,” notice need not be given. Where he draws solely for the purpose of raising money by discount for himself, he expects to pay the bill, and there is no person to whom he can resort for repayment. There is no person on whom he can have a legal or an equitable demand, in consequence of the non-payment of the bill. But how can the same reasoning be said to apply,
 
 d fortiori,
 
 to the case of the bill being drawn for the use of the acceptor ? In such case, the relative situation of the parties must be substantially the same, as if the money raised on the bill for the acceptor were funds of the drawer in his hands, on which the bill was drawn. Every motive for requiring notice of non-payment, in the case of a bill drawn upon funds, except that which results from a right to claim those funds by a suit, would apply to a bill drawn to raise money for the acceptor, unless it was understood at the time, that the acceptor was not to pay the bill.
 

 The case of
 
 Walwyn
 
 v.
 
 St. Quintin,
 
 then, can only be supported on the idea of an understanding that the drawee was not to pay the bill, or that a bill, drawn, not in the usual course of business, is a transaction to which *1611 ™™rcial rules do not apply. *In the case of
 
 Whitfield
 
 v.
 
 Sava
 
 ge (2 Bos. & Pul. 277), the drawer had funds in the hands of the acceptor, and the decision turned upon that point.
 

 
 *97
 
 The reasoning on the cases of protested bills has been gone into the more at large, because it has been considered as applicable to promissory notes indorsed under the statute of Anne, which is admitted to be in force in Maryland. The indorser has been considered as the drawer, and the maker of the note as the acceptor; and in all cases of an indorsement for accommodation, the indorser is likened to a drawer without funds in the hands of the acceptor.
 

 Where the money raised upon the note is received by the indorser, so that the note is discounted, in truth, for his accommodation, not for that of the maker, he is, unquestionably, without funds in the hands of the acceptor, must expect to pay the note himself, and cannot require notice of its nonpayment by the maker. But the same reasons do not appear to exist, where the note has been discounted for the maker. In that case, the funds which represent the note are in the hands of the maker, or, to use the language applicable to bills, in the hands of the acceptor, before the draft becomes payable ; the drawer had a right to draw, and had a right to expect that his bill would be paid. Upon principles of reason and of justice, then, it would seem, that notice of non-payment could be as little dispensed with in this case, as if he had himself paid the money to the maker of the note, and then received it from the bank, or as if the note had been given him for a previous debt, and had been discounted for his own use.
 

 Notice of non-payment by the maker is necessary, because the undertaking of the indorser is conditional, and wherever, in fact, the transaction is such, that the maker of the note ought, in justice, to pay it, and is bound ultimately to make it good, it would seem reasonable, that payment should be demanded from him, and that reasonable notice of non-payment should be given to the indorser.
 

 *If, however, the course of decisions be otherwise, the indorser of p, „„ a note for the accommodation of the maker must come within the L exception which dispenses with notice in his case. The cases which have been adjudged in England on promissory notes, are anterior, in point of time, to the cases of
 
 Walwyn
 
 v.
 
 St. Quintin,
 
 and of
 
 Whitfield
 
 v.
 
 Savage.
 
 The first which has been cited is
 
 De Berdt
 
 v.
 
 Atkinson.
 
 This note was indorsed for the accommodation of the maker, the indorser well knowing at the time that the maker was insolvent. Four judges who tried the cause were unanimously of opinion, that want of notice did not discharge the indorser. The opinion of the Chief Justice was founded on the known insolvency of the maker, and the consequent impossibility that loss could be sustained by the indorser from want of notice. The opinion of Justice Buller was founded on the circumstance that the note was indorsed for the accommodation of the drawer. He states explicitly, that the general rule is only applicable to fair transactions, and by fair transactions he means “ bills or notes given for value in the ordinary course of trade.” Justices Heath and Hooke accorded in the decision, but whether for the reasons assigned by the Chief Justice, or for those assigned by Justice Buller, or for both, does not appear.
 

 The same point came on to be considered in the case of
 
 Nicholson
 
 v.
 
 Gouthit.
 
 This was a strong case, because the indorsement was made in consequence of a previous engagement on the part of the indorser to guaranty the payment of a debt due from the maker of the note, who appears,
 
 *98
 
 from the transaction, to have been in bad circumstances at the time, and who became insolvent before the note was payable. From his connection with the maker, and from other circumstances, the indorser must have known that the maker would not pay the note, and it was the *under-J standing of all parties that it should be paid by the indorser. The justice of the case was said to be clearly in favor of the plaintiff, and under an impression that the want of notice in this case could not injure the plaintiff, the Lord Chief Justice had, at the trial, instructed the jury, that it was unnecessary, and indeed, that it might be considered as received by anticipation. In this case, the note was not made merely to raise money, but was made to pay a debt. The indorser, however, gave no value for it, and if likened to the drawer of a bill of exchange, he had drawn without funds in the hands of the acceptor, and with a knowledge that the acceptor would not pay the bill.
 

 But in the argument in favor of a new trial, the counsel contended, that the law upon a promissory note was differentt, in this respect, from the law on a bill of exchange, and though notice of the dishonor of a bill drawn, without funds in the hands of the drawee, need not be given, yet the rule in the case of promissory notes is totally different, and notice must in all cases be given to the indorser. In delivering the opinion of the court, Lord Chief Justice Eyre assented to this distinction, and admitted the rule with respect to notice to the indorser to be as stated. He, therefore, reversed his own decision at
 
 Nisi Prius,
 
 and granted a new trial upon the strict law, contrary to his ideas of the justice of the case. Heath and Rooke concurred in this opinion. BuxnER was not present, and, reasoning from his opinion in the case of
 
 De Berdt
 
 v. Atkinson, it is probable, he would not have concurred in the decision of this case.
 

 However, then, the law may be, with regard to the drawer of a bill of exchange, who, from other circumstances, may fairly draw, but who has no effects in the hands of the drawer, it seems settled in England, by the case of
 
 Nicholson
 
 v.
 
 Gouthit,
 
 that the law with regard to a promissory note is *164'l different, and that, if in *any case where the note is made for the ■* benefit of the maker, notice to the indorser can be dispensed with, it is only in the ease of an insolvency, known at the time of indorsement. In point of reason, justice, and the nature of the undertaking, there is no case in which the indorser is better entitled to demand strict notice, than in the case of an indorsement for accommodation, the maker having received the value.
 

 This court is of opinion, that the circuit court erred in directing the jury, that the
 
 laches
 
 of the plaintiffs, in failing to demand payment of the maker of the note, and to give notice of non-payment to the indorser, did not deprive the plaintiffs of their remedy against the indorser, and therefore, the judgment rendered in this case is reversed, and the cause remanded for further trial. A new trial, with instructions, &c.
 

 Judgment reversed.
 

 [1]
 

 Dickins v. Beal, 10 Pet. 578; Commercial Bank v.
 
 Hughes, 17
 
 Wend. 94; Robinson v. Ai.j33, 20 Johns. 146.