## McRae vs. Rhodes.

A drawer of a bill of exchange is not entitled to notice of non-payment, nor is it essential to his liability that presentment for payment should be made, where he had no funds in the hands of the drawee at the time of drawing the bill, or any reasonable expectation that it would be paid at maturity by the drawee.

An objection to the competency of a witness arising upon his own examination, he may be further interrogated to facts tending to remove the objection.

*Appeal from the Circuit Court of White County*

Hon. WILLIAM C. BEVENS, Circuit Judge.

B. D. TURNER & S. H. HEMPSTEAD, for appellant.

The bill sued on being in renewal was without consideration, liability on the original bill having been discharged by non-presentment and the second given in ignorance of such discharge. *Byles on Bills* 268; 4 *Humph.* 336; *Chitty on Bills* 541.

Part payment in ignorance of discharge by laches will not render a party liable. *Tibbetts vs. Dowd,* 23 *Wend'.* 379; *Thornton vs. Wynne,* 12 *Wheat.* 183.

Thompson being liable for not presenting the bill for payment, was an incompetent witness to prove want of funds in the hands of the drawees. *Chitty on Bills* 468, 469 *and note*; *Byles on Bills* 340—343.

H. R. OWEN, for appellee.

If the drawer had no effects in the hands of the drawee at the date of the bill, and no reasonable ground to expect that it would be honored he is chargeable without notice. *Hopkirk vs. Page,*

2 Proch. 80; *Dick Berger vs. Phelps*, 4 Por. & S. 891; *Rhea vs. Tucker*, 5 Ala. 452; *Vail vs. Cannon*, 4 Mason 119; 1 Collier 557; 1 Ala. & Mar. 672; 10 Pick. 307; 11 Ala. 814; 9 Ala. 511.

A subsequent promise to pay, or part payment, after the discharge by the bar, is prima facie evidence of knowledge of such discharge. 7 Porter, Ala. R. 975; 1 Atkins 69.

Mr. Justice Collier delivered the opinion of the Court.

This was an action of assumpsit by Rhodes, the plaintiff below, against Mrs. McRae, on a bill of exchange. The cause was submitted to a jury upon the issues joined, who found for the plaintiff, and judgment was rendered accordingly; and a new trial being denied Mrs. McRae, she excepted and appealed.

At the trial, it appeared that a Rhodes, that the bill of exchange sued on, was drawn by Mrs. McRae, on the 27th January, 184?, directed to Delamore, Clark & Co., requesting them to pay, on the 1st February, then next following, to the order of a Rhodes, L.... & Co., value received. It also appeared that a this bill was drawn by Mrs. McRae by way of renewal and in discharge of a bill previously drawn by her on Delamore, Clark & Co., in favor of Rhodes, Wright & Co., or James Wright for the firm, having date March 10th, 184?, and payable 1 February, 184?, being for amount of Mrs. McRae's indebtedness to Rhodes, Wright & Co., as ascertained upon a balance of account then made between them. These bills have neither been paid, nor was either of them presented for payment at maturity.

It is insisted for Mrs. McRae, that the plaintiff below is not entitled to recover; first, because the bill sued upon is without consideration, it having been given to renew or take up the bill dated 10th March, 184?, upon which the liability had ceased in consequence of the holders' *laches* in not presenting it for payment, and second, because the bill sued on was not duly presented for payment. For the sake of brevity these grounds of defence may be reduced to one proposition, and that is, that neither of the bills was duly presented for payment. It is insisted however, for the appellee, in answer to this proposition,

first, that presentment for payment was not necessary, because Mrs. M'Rae had no effects in the hands of the drawees, and second, that she waived the laws of the holder by partial payment, and promises of payment made after the maturity of the bills. We shall discuss but one of these propositions, and that is, that of effects.

The earliest English case on this subject is *Bikerdike vs. Bollman*, 1 *Durn. & East* 405; in that case it was stated, that if it be shown by the holder that, "from the time the bill was drawn till the time it became due, the drawee never had any effects of the drawer in his hands," notice to the drawer is not necessary; and the reason assigned is, that under such circumstances he had no right to draw, and could not be injured by not receiving notice. In course of time, however, it was found necessary to lay down the rule thus loosely expressed, with greater precision and accuracy. So, in *Lafitte vs. Thorpe*, 19 *East* 171, after stating the principle laid down in *Bikerdike vs. Bollman*, it was said, "that the court in that case, looking to the reason for which notice was required to be given, laid down the rule, *not generally*, that where the drawer had no effects in the hands of the drawee at the time, (which perhaps might turn out to be the case upon a future settlement of accounts between them,) no notice of dishonor should be given: but that it need not be given where the drawer *must have known*, at the time, that he had no effects to answer the bill, and could have no reason to expect that his bill would be honored." And in *Walwyn vs. St. Quintin*, 1 *Bos. & Pul.* 654, it was said: "But it may be proper to caution bill-holders not to rely on it as a general rule, that if the drawer has no effects in the acceptor's hands, notice is not necessary. The cases of acceptance on the faith of consignments from the drawer not come to hand, and the cases of acceptances on the ground of fair mercantile agreements, may be stated as exceptions and there may possibly be many others." In *Brown et al. vs. Maffey*, 15 *East* 216, Lord Ellenborough said: "The doctrine of dispensing with notice of the dishonor of a bill has grown almost entirely out of the case of *Bikerdike vs. Bollman*. That decision

dispensed with the notice to the drawer, where he knew before-hand that he had no effects in the hands of the drawee, and had no reason to expect that the bill would be paid when it became due." But this, he said, must be understood with some restric-tions, " as where the drawer, though he might not have effects at the time of the drawing of the bill, in the drawee's hands, has a running account with him, and there is a fluctuating bal-ance between them, and the drawer has reasonable ground to expect that he shall have effects in the drawee's hands when the bill becomes due."

In *Claridge vs. Dalton*, 4 *Maule & Selwyn* 226, the drawer had no effects in the hands of the drawee, except that he had sup-plied him with goods on credit, and the credit did not expire until after the bills would become due, and it was held that the drawer was not entitled to notice ; in that case, Lord ELLEN-BOROUGH said : " I accede to the proposition, that where there are any funds in the hands of the drawee, so that the drawer has a right to expect, or even where there are not any funds, if the bill be drawn under such circumstances as may induce the drawer to entertain a reasonable expectation, that the bill will be accepted and paid, the person so drawing it, is entitled to notice. The question therefore is, whether in this instance there were any funds in hand at the time of drawing applica-ble to the bill, or a ground of reasonable expectation that when the bill became due the drawee would come forward and pay it. As to funds, though there were goods of the defendant in the drawee's hands at the time of the drawing, yet they were not such as could be properly set against the drawing. And as to any reasonable expectation that the bill would be paid, it was neither accepted, nor had the defendant any claim upon the drawer to have it honored, according to the due course of credit between them, until the end of the year."    *    *    *.
" If there never was any drawing between the parties but at the end of the year, or accepting of bills, how shall we say that the defendant was authorized to entertain a reasonable expec-tation that his bill would be honored ? And if not, this falls

within the rule laid down in *Bikerdike vs. Bollman*, and notice was not necessary." See, also, *Blackhan vs. Doven*, 2 *Campb.* 503 ; *Rucker et al. vs. Hiller*, 16 *East* 43.

In *French vs. The Bank of Columbia*, 4 *Cranch* 141–2, it was said by the Supreme Court of the United States, " to be the fair construction of the English cases, that a person having a right to draw in consequence of engagements between himself and the drawee, or from any other cause, ought to be considered as drawing upon funds in the hands of the drawee, and, therefore, as not coming within the exception to the general rule."

In all of these cases it will be observed, that in the absence of funds actually in the hands of the drawee, the bill must be drawn under circumstances justifying a reasonable expectation on the part of the drawer that his bill will be honored. This principle seems to be recognized in all the cases we have met with, which modify the rule in *Bikerdike vs. Bollman;* but the chief difficulty in the case we are considering, as in most other cases of this character, is found in applying the principle to the particular state of facts presented.

In *Hopkirk vs. Page*, 2 *Brock.* 20, the drawer had 16 s. 11 d. in the hands of the drawees to whom he had made shipments of tobacco, being a balance growing out of their mutual dealings: The bill was drawn for £246, 3 s. 7 d., and the question was whether notice of dishonor was necessary. It was urged in argument, that the drawer should have had notice, because of the balance in his favor in the hands of the drawees; it was insisted, that if notice might be dispensed with when a small sum was in the hands of the drawee, it might also be dispensed with when a large sum was in his hands, provided that sum should be one cent less than the bill was drawn for. In reply, Chief Justice MARSHALL said: "I am aware of this argument, but think it more perplexing than convincing. There are many questions in which no precise line can be marked, which must depend on sound legal discretion, and where the case itself must be decided by a jury or by the court, acting on the principles which should regulate a jury. The sound sense and justice of the exception is, that where a drawer knows he has no right to draw

and has the strongest reason to believe his bill will not be paid, the motives for requiring notice of its dishonor do not exist, and his case comes within the reason of the exception. Where all transactions between the parties have ceased, and there is nothing to justify a draft but a balance of one penny, it would be sporting with our understandings to tell us, that a creditor for this balance, who should draw for a thousand pounds, would be in a situation substantially different from what he would be in, were he debtor in the same sum."

We will now proceed to test the bills drawn by Mrs. McRae by an application of the principles to which we have referred.

The drawees were her commission merchants in New Orleans, with whom she transacted business for two years. She consigned to them for sale her crop of cotton grown in 1852, the nett proceeds of which amounted to $2870 14; also, the crop of 1853, which netted $3011 08; these sums were paid to her at sundry times and in small amounts, usually in the way of necessary plantation supplies, and though the drawees accepted several drafts for her between the 18th March, 1853 and the 15th of November next following, without funds in hand, they were trifling in amount; and the general course of dealing seems to have been not to accept for Mrs. McRae, unless there was a balance standing to her credit, nor to make advancements upon her cotton until it was received, except for plantation supplies, and then in amounts always less than the probable proceeds of the forthcoming crop.

At the time the bill of the 18th March, 1853, was drawn, she had no effects in the hands of the drawees, and was told by their accountant, who was familiar with her pecuniary affairs, that the bill would not be accepted. From a statement of her account with the drawees, it appears that at the maturity of this bill, there was a balance to her credit, not exceeding $140 which, in the usual course of dealing between the parties, was soon thereafter paid out by the drawees for plantation purposes, upon small drafts previously drawn by Mrs. McRae, leaving

her in debt to the drawees in the sum of $27 78. Thus, no provision was made for payment of the bill of 16th March, 1853, at its maturity.

When the bill of 27th May, 1854, was drawn, Mrs. McRae had no funds in the hands of the drawees, she having ceased to do business with them, nor had she any there at its maturity; nor, according to the testimony of the witness, Thompson, who acted as the agent of Rhodes in procuring this bill, was it contemplated, either by himself or Mrs. McRae, that the bill should be presented for acceptance. Several witnesses testified, that they had known Mrs. McRae since 1851, and had always regarded her as solvent for $5000. It sufficiently appears in evidence, however, that she was laboring under pecuniary embarrassment, and had reason to believe that the drawees knew the fact.

Can it be said, under these circumstances, that at the time these bills were drawn, Mrs. McRae could indulge a reasonable expectation that they would be paid at maturity? We think not. There was nothing in the previous transactions between the parties that would warrant such an expectation; on the contrary, there was much to forbid it. The bills being for the payment of a pre-existing debt, and being for an amount greatly exceeding the value of any annual consignment she would probably be able to make, the drawing of them could but be regarded as outside of the ordinary course of dealing between her and the drawees, (*Claridge vs. Dalton, supra*); and when it is considered, in connection with this, that she did not contemplate that one of the bills should be accepted, and was told that the other would not be; that she was embarrassed, and solvent for but little more than the amount of the bills, and had reason to know that the drawees would be so advised—it would seem to be morally certain that she could have no reasonable expectation that the bills would be paid; and it was not, therefore, necessary to present them for payment. *Story on Bills, Section* 367.

The objection to the competency of the witness, Thompson,

is not well taken. The objection is, that the bill sued on was placed in his hands for collection, and that in not presenting it for payment, he was guilty of such negligence as would make him liable to the plaintiff, if the plaintiff should be defeated in this action. Without deciding whether he was competent upon any other ground, it is sufficient to say, that he was interrogated by the counsel for the defendant below, with the view of testing his competency, and though he answered that he had the bill for collection, he at the same time removed his incompetency by stating facts which showed it to have been unnecessary to present the bill for payment; and the rule is, that where the objection to the competency of the witness arises from *his own examination*, he may be further interrogated to facts tending to remove the objection, though the testimony might on other grounds be inadmissible. *Brittin & Andrews vs. Crabtree*, 20 *Ark*. 309.

Being of the opinion that if a new trial were granted in this case, the jury could not, upon the evidence, find otherwise than for the plaintiff, we will not discuss the instructions given them by the Circuit Judge, but will affirm the judgment as being right upon the whole record.