## ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI.

## FROM OCTOBER TERM 1870 TO MAY TERM 1871.

————: o :————

### Albert W. Dunbar v. Albert G. Tyler.

1. Implied Authority to draw Bills of Exchange.—D. drew his bill on N. & Co., of New Orleans, who accepted it. D. was, and had been for many years, a planter, and consigned his crops of cotton to the house of N. & Co., who were his factors, and who received and sold the same, and accepted and paid his bills, from time to time, there having been, during all that time, running or open accounts between the parties, and this bill was drawn on the expectation that the proceeds of the then growing crop would be realized to meet its payment. These facts created implied authority to D. to draw the bill in question, and justified his expectation that it would be paid at maturity, and he was entitled to notice of non-payment.

2. Same—Protest excused by reason of War—Diligence.—The bill was dated April 7th, 1862, payable six months after date, and accepted; but before maturity thereof, New Orleans was captured by the Federal forces, and all intercourse between the parties prohibited by the laws of war. And although this state of things prevented the holder of the bill, who resided at Natchez, from presenting the bill for payment, at maturity, and relieved him for the time being, from the necessity of attempting to do so; yet it was his duty, in order to preserve the liability of the drawer, to present it as soon after the removal of those unavoidable obstacles, as was practicable; and in default of his finding the acceptors, he was bound to use all due diligence to find them, and to give due notice thereof, and the failure to find.

VOL. II—1

3. SAME—DUTY OF HOLDER.—It is incumbent on the holder of a bill of exchange, payable at a particular time, if he would fix the liability of the drawer, to present it for payment on that day, and to give notice, in case of non-payment ; and if he has made every reasonable effort and used proper diligence to make demand, but has been prevented by impediments not referable to his own neglect, he will be excused, if he gives prompt notice to the drawer, of such efforts and failure.

4. SAME—DUTY TO MAKE DEMAND, IMPERATIVE.—The duty to make demand at the proper time is so peremptory, that hardly anything short of absolute necessity will excuse the omission. Bankruptcy, insolvency, absconding, or death of the acceptor, or loss of the bill, does not absolve him from that duty. Story on Bills, §§ 326-346-348.

5. SAME.—In all cases where the presentation to the acceptor, at the proper time, and the giving notice of non-payment has been prevented by any insurmountable obstacle existing at the time, or the efforts to prevent the presentation, it must be made within a reasonable time after the obstruction or hindering cause is removed, and the usual notice must be given.

6. SAME—RIGHT TO DEMAND AND EXPECT PAYMENT.—A person having a right to draw in consequence of engagements between himself and drawer, or in consequence of consignments made to the drawee, or from any other cause, ought to be considered as drawing upon funds in the hands of the drawee, and entitled to notice ; but unless he draws under some such circumstances, his drawing without funds, property, or authority, puts the transaction out of the pale of commercial usage ; and as he can in no wise suffer, he is not entitled to notice. 4 Cranch, 141 ; 10 Bates, 572.

7. SAME.—It must be shown that the drawer, from the time of making the bill to the time when it was due, had no property or effects in the hands of the drawee or acceptor, and no right on other grounds to expect that it would be paid ; or presentation for payment must be made, and if not paid, notice thereof must be given.

Error to the circuit court of Adams county.  SMILEY, J.

The plaintiff in error assigned the following errors :

1st. The court erred in overruling the motion of the plaintiff in error for a new trial.

2d. The court erred in giving the 1st, 3d, 4th, and 5th instructions asked for by the plaintiff below.

3d. The court erred in refusing the 1st, 3d, 4th, 5th, 6th, 7th, 8th, and 9th instructions asked for by the defendant below.

4th. And for other errors to be assigned on the argument.

*John D. Freeman,* for plaintiff in error.

If a drawer has a right to draw in consequence of engagements between himself and the drawee, or in consequence of engagements made to the drawee, or from other cause, he ought to be considered as drawing upon funds in the hands of the drawee, and is therefore entitled to notice.  Chit. on

Bills, 211, note 1; French v. Bank of Columbia, 4 Cranch, 141; Robinson v. Ames, 20 Johns., 146; Richie v. McCoy, 13 S. & M., 541.  The drawer of a bill is entitled to notice of its dishonor, though the drawee be not indebted to him, either when the bill was drawn or fell due, provided he had reasonable cause to believe that it would be honored.   Austin v. Rodman, 1 Hawk, 194; Chit. on Bills, 206; Story on Bills, 436, § 369; ib., 351-2, § 314, note 1; 13 S. & M., 541.

As to the 2d count, viz: That the holder of the paper could not go to New Orleans, where the acceptor lived, to present the same for payment at maturity, because of the prevalence of "civil war," etc., the same is insufficient in this, that the holder made no effort to present the bill for payment at any time; he made no diligent inquiry for the acceptors, in order to present the same, and to give notice of non-payment.   The death, bankruptcy, or absconding of the drawee or acceptor is no excuse for the omission to present the bill for payment. Story on Bills, 254, § 230; ib., 305, § 279.   The operation of superior force, or political events, or war, which prevents a due presentment, will not preclude the rights of the holder, if he afterward make due presentment and give notice as soon as it can be reasonably done.   Story on Bills, 375, § 327. The declaration makes no allegation that presentment for payment was ever attempted at any time after the bill was due, nor that notice of the failure to present was given to the drawer.

The first instruction given for plaintiff below, that, "If the jury believe from the evidence, that war existed at the date of the maturity of the bill sued on, and that the holder could not make presentment for payment, the holder is not guilty of laches in failing to present it when it fell due," is erroneous, because it should have had this qualification: "Provided, the holder afterward made due presentment and gave notice as soon as it could reasonably be done."   Story on Bills, 375, § 327.

The third instruction is also erroneous.   1st. Because the proof shows that Dunbar had effects in the hands of the

acceptors at the date of the bill, and all the time up to and after its maturity. 2d. Because the drawer, Dunbar, was entitled to notice, if, by reason of engagements, or any other cause, he had reason to believe the bill would be paid. The pleadings and proofs on the part of Dunbar, show this state of case, hence the instruction should have been qualified accordingly. Story on Bills, 351–2, § 311, note 1.

The fifth instruction is erroneous, because there was no proof before the jury to justify it; and because there was no promise to pay within one year. Rev. Code, 358, art. 1.

The first instruction asked by the defendant below : " That if defendant had reasonable grounds to expect that he would have funds in the hands of the acceptor at the maturity of the bill, he was entitled to notice of non-payment, and if such notice was not given within a reasonable time after non-payment, the jury should find for the defendant," was clearly the law of the case. Story on Bills, 351–2, § 311, note 1. The other instructions, 3d, 4th, 5th, 6th, 7th, 8th, and 9th, are all only variations in form of the same principles of law, and it was therefore error to refuse to give them as asked.

The acceptors have not been sued or prosecuted to insolvency. That war existed at the time the bill fell due, and that the holder lived in Mississippi, and the acceptor in New Orleans, the latter being in possession of the enemy, was but a temporary excuse. The war ended long before suit was brought, and yet no presentment for payment has been made, nor notice given of failure to present for payment. Story on Bills, 4th edition, § 327, note 4. The occupation of a country by an enemy is only an excuse for delay in making presentation, ib. See, also, Story on Bills, § 238, and note; 283, 286, 306, 308, and note 4, 310, and note 3, 311, 312, 313–327– 365–367–369–373–375, 376, 377; Chit. on Bills, 219, 220, 221–262, 263 ; 3 Kent's Com., 145–152; 3 Am. Dig., 64; 4 Cranch, 141; 1 Dallas, Penn., 291 ; 1 Bay, S. C., 291 ; Cook v. Martin, 5 S. & M., 379; Richie v. McCoy, 13 S. & M., 541 ; 35 Miss., 559.

*W. F. Mellen*, on the same side,

Insisted that the first instruction given for the plaintiff, is erroneous in that it did not have, after the words "fell due," the words "provided the holder made presentment to the acceptors for payment within a reasonable time after removal of the obstructions caused by the war." The second instruction of plaintiff ignores the authority to draw, and the understanding and agreement to pay, and the reasonable ground the drawer had to expect the bill to be paid. The fifth instruction in behalf of the plaintiff below was erroneous, because no subsequent promise by the drawer, to pay a bill of exchange is binding upon him when made in ignorance of the fact that the bill had not been presented for payment. This should have been covered by the instruction. Story on Bills, §§ 373–375–377; 3 Kent's Com., 113.

The first instruction asked for by the defendant below, is the law. "Reasonable time" necessarily includes the idea of delay caused by some impediment. The fourth instruction for the defendant, is law, and was likewise improperly refused. The sixth instruction asked and refused, is copied, *verbatim* from the case of Richie v. McCoy, 13 S. & M., 541. See Story on Bills, § 312. The foregoing remarks apply likewise to the seventh and ninth instructions asked for on behalf of the defendant below.

That Dunbar had a right to expect that his draft on Nugent & Co. would be paid at maturity, is clearly established by the testimony. The long course of dealings between the parties—as consignor and consignee, the understanding between them, the authority given to draw still further, as shown by the evidence, all go to show that Dunbar was clearly justified in his expectation that the draft would be paid at maturity. Richie v. McCoy, 13 S. & M., 541, citing Chit. on Bills, 468; ib., 327, 328, and notes 353–358; Cook v. Martin, 5 S. & M., 379; Dickens v. Beal, 10 Peters, 572; Story on Bills, §§ 369–375–377; 3 Kent, 107–110, and authorities cited; French's ex'rs v. Bank of Columbia, 4 Cranch, 141. It will not be sufficient in any such case, to say that the drawer

had not sustained any damage or prejudice by want of notice. Story on Bills, §§ 306–238, and note, 312–377 ; Chitty on Bills, 327 ; see 13 S. & M., 541 ; Suttliffe v. McDowell, 2 Nott & McCord, 251. Dunbar did not withdraw his funds, they were sent to him with a message from Nugent to draw further, if he desired to do so. It does not matter that the funds were not equal to the amount mentioned in the bill. Story on Bills, § 211.

When demand and notice are required, but cannot be made at the proper time, on account of insurmountable obstacles, they must be made and given within a reasonable time after such obstacles shall be removed. Story on Bills, §§ 283–286–308–327–365 ; 3 Kent's Com., 109–358 ; Chit. on Bills, 422 ; 6 Pick., 80 ; 1 N. H., 140 ; 1 Dallas, 291 ; 2 ib., 233 ; 7 Serg. & Rawle, 324 ; 7 Mass., 483 ; Byles on Bills, 231, 232 ; 13 Johns., 470.

*Carson & Shields,* for defendant in error.

The declaration contains three counts, and we take it, that under the first, any fact excusing notice, as a subsequent promise to pay, could be given in evidence. That under the second count, it being impossible to make the demand for payment and to give notice of protest, it was for that reason excused ; the law never requiring impossibilities ; although, were this the only ground relied on to excuse notice, it might be necessary that demand of payment should have been made as soon as, or within a reasonable time after, the war ceased. But we contend that under the third count, proof of the want of effects in the hands of the drawee, made a demand for payment and notice of protest unnecessary. If the drawer has sustained no injury by the want of notice, then none is required. Byles on Bills, 295, and notes. And if he has no "right of action" against the acceptor, or other person, he is not entitled to notice in order to fix his liability. Byles on Bills, 303, and note. This bill was drawn for a valuable consideration upon the drawees, who accepted for the "accommodation" of the defendant ; he is not, therefore, entitled to

notice. Byles on Bills, 302, note 139; ib., 302, note 140; 2 Term R., 713; Rogers v. Stevens; ib., 405; Wash. C. C. R., 414; 1 Cain, 157.

The drawer had sold to drawees certain cotton, who were to pay half the price down, the balance on delivery, but it was never delivered. The amount paid was withdrawn by the defendant, Dunbar. Out of this transaction, the drawer raises his whole defense, and endeavors to bring himself within the general rule of notice. The drawees, under the expectation that Dunbar would ship them his cotton, accepted the draft for his accommodation. The drawer expected to ship his cotton, the drawees expected to receive it. Here was a reasonable expectation on the part of each. But the money arising from the above named cotton transaction, April 30th, 1862, had been paid to Dunbar. Having, therefore, no funds or effects in the hands of the drawees, he was not entitled to notice. Byles on Bills, 304, notes, and cases cited. See 14 Mass., 116; 20 Johns., 145; 16 East, 43, as to what constitutes a reasonable expectation.

No demand was necessary after the war ceased. The only object of demand and notice is to give the drawer an opportunity to withdraw his effects, or otherwise protecting himself. 4 Cranch, 159; Byles on Bills, 295. So, if the bill was accepted for the accomodation of the drawer, and there was nothing but the bill between them, no notice was necessary. Byles on Bills, 305, and note 149. So, also, the want of funds in the hands of the drawee, dispenses with the necessity of notice to the drawer. Cook v. Martin, 5 S. & M., 379. For the distinction between the endorser and the drawer of a bill, see French v. the Bank of Columbia, above cited.

*George L. Potter*, on same side.

It is manifest that, upon this proof, the jury were compelled to find against Dunbar. Two disinterested witnesses proved that the bill was accepted for his accommodation, and for the consideration of receiving his crops for sale. They both depose that, neither at the date nor at the maturity of

the bill, had Dunbar any funds or effects in their hands; nor had he any in the intermediate time, except some $590, which was sent to him in July. So that, from date to maturity, he had no effects, except what were paid to him. The bill was accepted for his accommodation. He had nothing in their hands to be protected at the maturity of the bill; no effects to secure, and therefore he is liable, without demand or notice. Commercial Bank of Albany v. Hughes, 17 Wend., 94; Hoffman v. Smith, 1 Cain, 158; Shirley v. Fellows, 9 Port., 303; Sharp v. Bailey, 9 Barn. & Cres., 44 (17 E. C. L.), 329; Evans & Norris, 1 Ala. (N. S.), 513; Edwards on Bills, 638; Story on Bills, §§ 312, 313. The verdict is clearly right, and in such a case a new trial will not be granted, even though there be error in giving or refusing instructions. Dunlap v. Edwards, 29 Miss., 45.

There seems no ground to object to the five instructions given for the plaintiff. The second instruction asked for defendant, was given, and it contains all he could claim, and more. His first instruction was properly refused. It is erroneous, because, among other things, it declares defendant entitled to notice in a reasonable time " after maturity," and excludes all consideration of the fact, that, by reason of the war, due presentation was impossible. His third charge is also erroneous. It looks only to the delay caused by the war, and excludes from consideration the evidence that this was accommodation paper, and no funds in the hands of the drawee. So as to the fourth instruction. It directs a verdict for defendant " if the jury believe that under the circumstances, it might properly be presumed" that the acceptors would pay the bill. It excludes from consideration important facts in this case, viz.: that this was an accommodation acceptance, and the drawer was, in fact, the party who ought to pay the bill. There must be a further showing, proof of facts showing, that, under the circumstances, the drawer has a right of action against the accommodation acceptor; or that the drawer was in a condition to suffer loss from neglect to make due demand, and give notice. When this fact

is shown, the law excuses demand and notice ; and then the drawer is put to show such a state of facts as would entitle him to notice.  But, in this case, he fails to show such facts.

Counsel urge that this was not an accommodation bill, because it was accepted, as the acceptor says, for accommodation of Dunbar, and for the consideration of receiving his crops for sale ; but this expectation to receive, or agreement to ship cotton to be sold by them, on commission, did not change the accommodation character of the paper.  One thing, however, is to be noted, if this bill was accepted for the consideration of receiving his crops, then the consideration failed by default of Dunbar, as he took his money from them, so he failed to ship them cotton.  So far as " the receiving of crops for sale" was a consideration for the acceptance, it had failed, as Dunbar knew, by his own default.  As to the fifth instruction asked for defendant, it related to a subsequent promise of which there was no proof, and was not relevant.  The sixth was not relevant, even if true as an abstract proposition.  It omits the important considerations that this bill was accepted for accommodation of the drawer ; that defendant's funds had been withdrawn, and that there was a war.  The seventh is in like manner, objectionable.  The eighth relates to a new promise, and is irrelevant.

*John D. Freeman*, in reply.

The main question still stands unanswered by counsel.  The proof by Nugent, the acceptor, and Thomas, his clerk, and Dunbar, himself, all concur in the fact that Dunbar had a right to expect that the bill would be paid at maturity.  His preceding agreements show that he had the unrestricted right to draw on Nugent & Co.  That after this bill was drawn, they paid him $590, and authorized him to draw for more, admitting that he had funds still in their hands, and an unquestioned right to expect that his bill would he paid.  The war was but a temporary excuse for non-payment and demand of payment.  No effort was made to present the bill to Nugent

& Co., after the war, and no notice to Dunbar that it had not been presented and paid.

SIMRALL, J.:

This suit was brought by Albert G. Tyler, as the endorsee of a bill of exchange against Albert W. Dunbar, as drawer. The bill was dated, Natchez, April 7th, 1862, payable six months after date, to the order of W. A. Britton & Co., and addressed to R. Nugent & Co., New Orleans, La., and by them accepted. The city of New Orleans was captured by the United States forces, May 1st, 1862. No demand of payment was made at maturity, nor was any made after the close of the war. The questions arise on the liability of Dunbar, as drawer of the bill. The contract of the drawer is conditional. It is that the drawee shall accept the bill, and also, that the acceptor shall pay it on due presentment; and if, on presentment for acceptance or for payment, the bill is not duly honored, then, on notice thereof, the drawer will pay it. The liability of the drawer is dependant on the compliance, upon the part of the holder, with these terms. If a bill is due on a day certain, demand for payment must be made on that day. If payable at a particular place, the demand must be made at the place. The acceptor is like the maker of a promissory note, liable absolutely; and no special demand need be made of him before suit brought. Dunbar was entitled to a fulfillment of these conditions, in order to hold him to responsibility as drawer, unless there are some special facts which withdraw him from the operation of the general rule. It is said that he was not entitled to notice of demand and non-payment, because the paper was accepted for his accommodation, and he had no funds in the hands of the acceptor, and no right to draw the bill, or to expect its payment, and therefore, could sustain no damage by not receiving notice; the object of prompt notice being to enable him, immediately to withdraw his funds from the acceptor, and close his dealings with him.

The law enjoins upon the holder of negotiable paper,

promptness and diligence with respect to it. If it is payable at sight or on demand, it must shortly be put in circulation or presented to the drawee. If held up by the payee an unreasonable time, the party from whom he took it, will be discharged. The theory of a bill of exchange originally was an appropriation of the funds of the drawer in the hands of the drawee, to the payee, or his order; and he should be entitled, therefore, to prompt and strict notice, if the fund is not paid over, so that he may take measures to protect himself from loss. If the bill is payable at a particular time, it must be presented to the acceptor for payment, when due. It is absolutely incumbent on the holder to do this, if he expects to look to the drawer, in the event of dishonor. If he has made every effort, and used proper diligence to make the demand, but has been hindered and disappointed by impediments not referable to himself or his laches, he will be excused; provided, he gives notice of his efforts in this behalf to the drawer; for these shall be accounted to him of equal worth with an actual demand. If by imperative circumstances above his control, he has been delayed in the demand, so that he could not make it when the bill was due, he will also be excused; provided, he perseveres in his diligence, and calls upon the acceptor as soon as he reasonably can; and of all this give prompt advise to the drawer. The duty to make demand for payment on the day of the maturity of the bill is peremptory; that hardly anything short of inevitable necessity will excuse the omission. The bankruptcy, insolvency, absconding, or death of the acceptor, before or at the time of its falling due, does not absolve from the duty. Story on Bills, §§ 326–346. In case of the death of the acceptor, presentment should be made to his executor or administrator, if he or his residence can, on inquiry, be found. If the legal representative cannot be found, then presentment should be made at the domicile of the deceased. The loss of the paper does not discharge the holder from this duty; the demand should be made of the acceptor, with a tender of indemnity, and if he refuse, protest should be made, and notice should be given. Story on Bills, § 348.

Failure to present may be excused on account of the political condition of the country where the bill is drawn or, where payable, rendering it impracticable, or by any other reasonable cause, not referable to the negligence of the holder. Story on Bills, 234; Martin v. Ingersoll, 8 Pick., R., 1; Schofield v. Bayard, 3 Wend., 488; Hopkin v. Page, 2 Brock., 20; Story, § 279. So, also, will the prevalence of a malignant disease, as yellow fever, or cholera, the sudden illness or death of the holder, the stoppage of the mail, by ice or snow, war, or other circumstances interrupting intercourse, or other accident or inevitable casualty. Story on Bills, § 308. But in all such cases, the presentment must be made within a reasonable time after the obstruction or hindering cause is removed. Want of funds, and the absence of reasonable expectation of the payment of the bill, or of its acceptance, or of a right to draw, may release the holder from the necessity of giving notice of non-payment to the drawer. But we find in the authorities no excuse for non-presentment, to the acceptor, except some inevitable cause or casualty, over which he had no control. The dispensation, with notice for any reason, is of modern origin. Blackstone laid down the rule to be general, and makes no exception to it. 2 Comm., 469. The first departure from the general rule was in the case of Bickerdike v Bollman, 1 Durn. & East, 405, and was laid down in these terms: " If found by the holder that, from the time the bill was drawn till the time it became due, the drawer never had any effects of the drawer in his hands." The reason assigned was, that the drawee had no " right " to draw, and could not be injured. In the course of business and commercial transactions, persons might draw bills, with the best reason for expecting acceptance and payment, although they might have no funds, at the time, in the hands of the drawee and acceptor to meet it. In such condition of the dealings of parties, the reason for giving notice would apply.

In the case of Blackhan v. Doren, 3 Camp., 503, Lord Ellenborough said: " If a man draw upon a house with whom

he has had no dealings and no account, he knows the bill will not be honored ; he can suffer no injury for want of notice; and therefore is entitled to no notice. But the case is otherwise where the drawer has a fluctuating balance in the hands of the drawee."

In the later case of Rucker v. Hiller, 16 East, 43, the same learned judge declared that: " Where the drawer draws his bill on the *bona fide* expectation of assets in the hands of the drawee to answer it, it would be carrying the case of Bickerdike v. Bollman further than has ever been done, if he were not, at all events, entitled to notice of the dishonor. The case is very different when the party knows he has no right to draw the bill. A *bona fide* reasonable expectation of assets with the drawee, has several times been held sufficient to entitle the drawer to notice."

Reviewing the English cases, it was said by the supreme court, in the case of Bank of Columbia at the suit of French, 4 Cranch, 141, " to be the fair construction, that a person having a right to draw in consequence of engagements between himself and drawee, or in consequence of consignments made to the drawee, or from any other cause, ought to be considered as drawing upon funds in the hands of the drawee, and entitled to notice."

In Dickens v. Beal, 10 Peters, 572, referring to the previous adjudication as correctly expounding the principle, the court add : " But unless he draws under some such circumstances, his drawing without funds, property, or authority, puts the transaction out of the pale of commercial usage ; and, as he can in nowise suffer, is not entitled to notice."

The rule recognized in this court, in Ritchie v. McCoy, 13 S. & M., 543, is, in order to dispense with notice, " it must be shown that the drawer, from the time of making the bill to the time when it was due, had no property or effects in the hands of drawee or acceptor, and no right on other grounds to expect that it would be paid." It was further said that the single fact of want of funds at the maturity, did not dispense with notice.

The testimony was that Dunbar was a cotton planter, and a customer of the acceptors of his bill, who were his factors; that the proceeds of his crops were at his disposal; that he, as other customers, had implied authority to draw for the needful advances, etc. The course of the dealings tended to show, at least, an implied authority to draw, and the funds might reasonably be expected to be in the hands of Nugent & Co., in the fall and winter, in the shape of consignments of cotton to meet the paper. These dealings had extended through several years prior to the date of this transaction. The bill was drawn on shipments of cotton expected to be made—the produce of the year's crop; and there might have, therefore, been a reasonable expectation that the bill would be honored. It was not the case of drawing upon a house with which the drawer had no account, and, therefore, no just ground of expecting payment. But it was a bill made upon his factors with whom he had dealt for several years, and may, from the course of the business, have well expected that the paper would be honored. We do not think that the interests of commerce, or the credit of negotiable securities would be subserved by relaxing the general rule, except when the reasons for the exceptions fully apply. Presentment for payment could not be made, because the city of New Orleans was, at that time, in the military possession of the United States forces, and the holder of the bill was at Natchez, in this State. A state of war (civil war) existed between the people of the states of Mississippi and Louisiana and the United States. Although it was a domestic and civil war, it brought along with it all the consequences and disabilities of foreign war. Among these, were the interdict, as unlawful, of all intercourse and business. When New Orleans fell into the hands of the United States forces, intercourse and business between its inhabitants and those of Natchez, in this state, became unlawful; and such we understand to be the decisions of the supreme court of the United States, on these subjects.

This condition of things, therefore, relieved the holder

from the obligation to demand payment of the bill from R. Nugent & Co., at New Orleans, at its maturity.   But so soon as intercourse and business was re-established, after the close of the war,. as it was, by the proclamation of the President, in July, 1865, it became incumbent on the holder, within a reasonable time, to make the demand.   The insolvency of the acceptors is no sufficient reason for not doing so, nor is the failure of the drawer to make provision for the bill.   As a precedent condition to hold the drawer, this demand must have then been made, if, upon inquiry, the acceptors could have been found.   The holder is under a perpetual duty to diligence with respect to the paper, if he proposes to hold the drawer.   The suspension of intercourse, during the war, made a demand, at maturity, impracticable ; but so soon as the obstructing cause is put out of his way, he must instantly persevere in his diligence.   It was his own laches that he did not make this demand.   The views of the law, given and withheld from the jury, by the circuit court, do not concur with the principles we have expressed, without special comment on each prayer, as given and refused, there can be no difficulty in charging the jury in agreement with our views.

There was error on the part of the court, and the verdict is without evidence of any presentment for payment, after the close of the war.

Let the judgment be reversed,   and *venire facias de novo* awarded.